JOESPH B. MARTINDALE and Another (MILLS & GIBB), Plaintiffs, v. CHARLES DEKAY, Defendant.*

(Supreme Court, New York Trial Term, March, 1917.)

*Negotiable instruments — action on corporation check brought by receiver of foreign corporation — measure of defendant's liability — no rights of creditors involved.*

ACTION to recover upon a check.

White & Case, for plaintiffs.

Sobel & Brand, for defendant.

GREENBAUM, J. The plaintiffs, as receivers of Mills & Gibb, a New Jersey corporation, vested with power to prosecute actions in behalf of the corporation for the protection and preservation of its assets, bring this action to recover the proceeds of a certain check for $1,000, dated December 21, 1911, made by the corporation through its treasurer, William T. Evans, to the order of the defendant and drawn on the Chemical National Bank of the City of New York. It is alleged that the defendant received this check and the proceeds thereof on account of and in discharge of a personal obligation of William T. Evans and "that by means of said check the said William T. Evans wrongfully and unlawfully withdrew $1,000 of the funds of Mills & Gibb from the said Chemical National Bank of the City of New York and applied the same to his own personal use" and that the "defendant had and

---

*Affirmed by the Appellate Division, First Department, November 9, 1917.—[REPR.

received the said $1,000 to and for the use of said Mills & Gibb.''

The facts are undisputed. It appears that Mills & Gibb became incorporated in 1900, when it succeeded the copartnership known as '' Mills & Gibb.'' In 1911, when the check in suit was made, one H. Elmer Gibb was president of the corporation, William T. Evans was its treasurer and secretary, and Frederick A. Valentine was its vice-president. Upon the death of Mr. Gibb in 1913 Mr. Evans became president. From the date of the creation of the corporation the former president, Mr. Gibb, as well as Mr. Evans, had private accounts with the corporation in which moneys belonging to and left by them with the corporation were credited to them and against which they were in the habit of regularly drawing checks, in many cases in small amounts, for the payment of their personal obligations, which were debited against them in their respective accounts. These books formed a part of the regular books of account of Mills & Gibb and were kept by its duly authorized bookkeepers, under the direct supervision of Mr. Valentine, who was the head bookkeeper. The salary of Mr. Evans, amounting variously from $35,000 to $45,000 per annum, instead of being paid direct to him, was credited to his account, against which he drew as the occasion required to meet his personal obligations and expenditures.

Indeed, seven different accounts were kept in the name of Mr. Evans affecting his individual ventures or interests, as follows: Cash, private, Terrace Court apartment house, building, One Hundred and Seventy-fifth street lots, Montclair Art Association, individual underwriters. The entries under these accounts indicate numerous items, involving large sums of money belonging to and deposited by Evans from time to time with Mills & Gibb, the receipts of his real estate investments and his other transactions, including the receipts of a sale of pictures belonging to him

aggregating $150,000. The accounts also contained debits for moneys owing by Evans to the corporation, which in 1916, when the receivers were appointed, indicated a very large net indebtedness to the corporation. The course of dealings between Evans and " Mills & Gibb " establishes a debtor and creditor relationship between them somewhat analogous to that arising between a depositor and bank. It also appears that at the annual meeting of the stockholders of the corporation, held on the 31st day of January, 1912, resolutions were unanimously adopted that all payments and disbursements made since January 25, 1911, appearing on " the books of account and other books of the corporation be, and the same are, hereby approved, ratified and confirmed." Similar resolutions were unanimously adopted at a stockholders' meeting held on the 28th day of January, 1914, for the period commencing January 29, 1913.

The conclusion is irresistible that from the creation of the corporation to the date of the appointment of the receivers the corporation accepted deposits from Evans derived from his outside personal transactions and credited his personal account with moneys which were owing to him by the corporation, against which it issued checks for his personal use, and that the checks thus delivered to and used by him, aggregating hundreds of thousands of dollars, were drawn not surreptitously, but openly and notoriously, with the knowledge and consent of the officers of the corporation. There can be no doubt that the delivery to the defendant of a corporate check for a personal obligation put the defendant upon his inquiry as to the authority of Evans to deliver it, and that as matter of fact no inquiry was made by defendant as to whether the making of the check was authorized by the corporation. But assuming that the defendant had made inquiry of Mr. Gibb, the then chief executive officer of the corporation, or of the vice-president,

Valentine, it is clear that he would have been advised that the check was issued with the sanction of the corporation. Corporation checks were regularly used in payment of the president's personal accounts, and there can be no question that he was fully aware of the similar practice of the corporation with respect to its payment of the obligations of Evans. Had inquiry been made of Mr. Valentine, the vice-president and head bookkeeper, he could not have done otherwise than state that the issuance of the check was authorized. As there were no officers other than Evans it follows that inquiry would have been bootless. It is wholly immaterial, so far as defendant is concerned, whether the officers and directors conducted the business of the corporation loosely or even contrary to its by-laws.

Defendant's liability may only be measured by the duty cast upon him to make inquiry at the sources obviously available to him for the purpose of ascertaining whether the check was issued with authority, and he is only chargeable with knowledge of all the facts of which he might be apprised upon such inquiry and of all the inferences to be fairly drawn therefrom. *Cohnfeld* v. *Tanenbaum,* 176 N. Y. 126; *Ward* v. *City Trust Co.,* 192 id. 61, 70; *Bischoff* v. *Yorkville Bank,* 218 id. 106; *Ehrlich, Inc.,* v. *Levine,* 83 Misc. Rep. 136. The defendant would have been legally justified in accepting the check had he been apprised by the officers of the corporation that its issuance was authorized by them, for the reason that the transaction was wholly consistent with the idea that the corporation had in its possession moneys belonging to Evans and against which he was entitled to draw by means of checks payable as he directed.

The point made by plaintiffs that the answer of the defendant makes no averment of ratification of Evans' acts by the corporation and that it had no power to ratify an unauthorized act is not relevant to the situa-

tion here disclosed. This is not a case of ratification, but one where reasonable inquiry of the officers in control of the corporation would have shown that the issuance of the check was known to and authorized by the corporate officers. Indeed, even if there were an affirmative defense of ratification, it seems clear that the resolutions adopted by the stockholders at two successive annual meetings would scarcely amount to a ratification, not only because it appears that all of the stockholders were not present at these meetings, but because it does not appear that the stockholders knew that the books of the corporation contained entries showing the payment by corporation checks of the personal claims of Evans.

As to the plaintiffs' claim that it was *malum prohibitum* under the statutes of New Jersey and of this state for a stock corporation to loan money to a stockholder, it seems to me that it has no application to a transaction like this, where a corporation would clearly be authorized to pay over to a stockholder or to a third party upon his direction moneys in its possession belonging to him and where the only duty cast upon the third party is to make reasonable inquiry to ascertain whether the making of the check was authorized by its officers. This rule is applicable against one who is chargeable with knowledge that funds of a corporation received by him had been misappropriated. In such a case the misappropriation could not be ratified as against the corporation by a majority of the stockholders or as against the rights of the creditors by a vote of all the stockholders. *Moch Co.* v. *Security Bank of New York,* 176 App. Div. 842. In the case at bar no claim is made that the rights of creditors are involved, and there is no proof that the rights of any creditors of the corporation at the time of the making of the check were affected by its issuance. A verdict must be directed for the defendant.

Judgment accordingly.