MARTIN S. LYNCH, Appellant, *v.* BENN CONGER and Others, Respondents, Impleaded with CLARENCE S. MALLERY, Defendant.

Third Department, December 28, 1917.

**Equitable assignment — agreement by bridge company to pay attorney from moneys due under contract — liability of president and director of company for converting money equitably assigned.**

Where a bridge company retained an attorney to aid it in the procuring and execution of a contract with the city of New York, and agreed that said attorney should receive a certain sum for his services out of the final payment by the city, and after said attorney had furnished all the services required by the company, its president promised and agreed to notify him when the city would be ready to pay the final estimate, and later the bridge company and its president agreed that said attorney was entitled to and should receive his share of the final estimate and that a separate check should be given him therefor by the city, and thereafter, without notice to said attorney, the president of the bridge company notified a director to draw the entire amount due from the city and this was done and the proceeds deposited to the credit of the bridge company and used in the payment of its debts, among which was a debt to a partnership of which the president of the bridge company was a member, said agreement between the attorney and the bridge company operated as an equitable assignment to the attorney and the president and director of said company incurred a personal liability when they converted the amount due the attorney to their own use.

Any writing, words or act which indicate the intent of the assignor to make appropriation of a fund or a part of it and from which an assent by the assignee to receive may be inferred, will, in equity be enforced as an assignment if sustained by a sufficient consideration.

APPEAL by the plaintiff, Martin S. Lynch, from a judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of Tioga on the 29th day of August, 1917, dismissing the complaint upon the decision of the court after a trial before the court without a jury.

The facts found by the trial court, which are important to the consideration of the questions of law involved, are that the plaintiff was an attorney and counselor at law; that sometime during the year 1912 the Owego Bridge Company, a domestic corporation, of which the defendant Willis N. Conger was president and the defendant Benn Conger a director, was awarded a contract to furnish the material and erect all the steel to be used in the construction of an armory in the city of New York for the sum of $532,000; that during the negotiations leading up to the making of the contract the plaintiff performed services and gave advice and counsel, as attorney at law, to the bridge company, its officers and general manager, pertaining to the contract and the methods to be employed in obtaining an award; that after the award was made, and before the contract was actually delivered, the Owego Bridge Company, through its proper officers, hired and retained the plaintiff as its attorney and counselor to act for it, to advise and counsel it, and to furnish all services thereafter required of him, as attorney and counselor at law, in and about the execution of the contract and the fulfillment of the duties of the bridge company until the contract should be fully completed; that it was agreed between the plaintiff and the defendant that the amount and value of plaintiff's services to that date, and to be thereafter rendered as such attorney and counselor at law, should be $5,000, and " that the plaintiff should receive out of the funds to be paid by the city of New York in and by the final estimate or final payment, the sum of five thousand dollars;" that prior to June 16, 1914, the plaintiff had furnished all the services required by the defendant and had in all respects fulfilled his contract, and the sum of $5,000 was then fully earned;

that sometime prior to the 17th day of June, 1916, Willis N. Conger, the president of the bridge company, " promised and agreed with the plaintiff to notify him of the date when the city of New York would be ready to pay over the final estimate of $16,856.30, in order that the plaintiff might be present to receive his share of the said final estimate;" that on the 17th day of June, 1916, the armory was completed and the city of New York was ready and prepared to pay the sum of $16,856.30 on the execution of the proper receipt therefor; that a conference was had on that day between the plaintiff, Willis N. Conger and the defendant Benn Conger; " that in said conference the Owego Bridge Company and the defendant, Willis N. Conger, agreed with the plaintiff that the plaintiff was entitled to and should receive his share of final estimate, and that he should receive from the city of New York a separate check for the amount of his said share;" that Benn Conger disputed the claim of the plaintiff and stated that he had paid about $100,000 of the debts of the bridge company, and would agree to pay all that was due to the plaintiff after the same was adjusted, if plaintiff would permit the entire $16,856.30 to be paid over to him by the city; that the plaintiff refused to accept this proposition, and it was then agreed between said parties that another conference should be had, and until such further conference should be had between the plaintiff, Willis N. Conger and Benn Conger, none of the funds should be drawn by any of the said parties, and in the meantime the fund should remain intact and in the hands of the city; that before the time appointed for the second conference and between the 25th and the 27th days of June, 1916, the defendant Benn Conger notified the defendant Willis N. Conger, by telegraph, to go to New York and draw the entire amount of $16,856.30; that the defendant Willis N. Conger, pursuant to said direction, and without notice to or the knowledge of the plaintiff, obtained a check for the entire amount, caused the same to be collected and deposited the proceeds to the credit of the Owego Bridge Company; that on the following day he drew a check, as president of the bridge company, for the amount so deposited, payable to C. W. Conger & Co., a partnership of which Benn Conger and his brother, Jay Conger, were the only surviving

members, and caused it to be delivered to Benn Conger; that Benn Conger on the same day caused the check to be collected, paid $7,164.97 of the proceeds upon a debt of the bridge company that had been guaranteed by C. W. Conger & Co., and applied the balance, $9,691.33, upon an indebtedness of the bridge company to C. W. Conger & Co. It was also found that on June 17, 1916, the Owego Bridge Company was insolvent to the knowledge of Willis N. Conger and Benn Conger.

The court found, as conclusions of law, that the agreement between the plaintiff and the Owego Bridge Company did not operate as an equitable assignment or create an equitable lien upon the funds constituting the final estimate; that when the sum of $16,856.30 passed to the Owego Bridge Company and from it to C. W. Conger & Co., it was not impressed with a trust in favor of the plaintiff; that the plaintiff had failed to establish a cause of action in equity and that the complaint should be dismissed.

*Martin S. Lynch* [*James S. Truman* of counsel], for the appellant.

*O. U. Kellogg,* for the respondents.

SEWELL, J.:

This is, in form, an action to determine that the plaintiff had an equitable lien on or ownership as equitable assignee of the funds constituting the final estimate to the extent of $5,000 and to compel the defendants Willis N. Conger and Benn Conger to account and pay over to the plaintiff $5,000, his proportional part of the fund taken and converted by them to their own use, with interest thereon.

We think that the facts found authorize the conclusion that the agreement between the plaintiff and the Owego Bridge Company operated as an equitable assignment to the plaintiff to the extent of $5,000 of the fund of $16,856.30, constituting the final payment to the Owego Bridge Company under its contract with the city of New York.

Were it not that the trial court held that they did not we would have hardly supposed such a conclusion susceptible of reasonable doubt.

The best authorities on the subject of equitable assignment

hold that no particular form of words is necessary; that any writing, words or act which indicate the intent of the assignor to make an appropriation of a fund, or a part of it, and from which an assent by the assignee to receive may be inferred, will, in equity, be enforced as an assignment, if sustained by a sufficient consideration.

It is unnecessary to refer to authorities for this general principle. It is to be observed that the language used in the present case does not show a mere executory agreement to pay a debt out of a designated fund, but a purpose, on the one hand, to set aside and transfer a fixed portion of a specific fund, in or to come into the hands of a third party, and an assent to receive it on the other. It shows an agreement to divide the fund into two parts, one of $5,000, and one of the balance, and that the $5,000 portion shall be paid to the plaintiff, not by the contractor, or out of the moneys to be received by it, but by the city itself.

That the parties understood that this was an actual application of the fund *pro tanto* and conferred a complete and present right on the plaintiff to that part, is apparent from the fact that after the agreement was made he was requested to consent to the payment of the whole amount to the contractor and refused.

We think this case is covered by the decision in *Williams* v. *Ingersoll* (89 N. Y. 508) where certain attorneys were employed to transact the legal business required in the prosecution of certain claims, under an agreement that they were to be paid for their services out of the money that should be obtained from the suits or proceedings, and should have a lien thereon for all sums that might be due for their services which lien should be superior to any rights the plaintiff might have, and it was held that the agreement operated as an equitable assignment to the attorneys of the moneys obtained, and that a notice to the debtors was not necessary to make the assignment valid.

In *Fairbanks* v. *Sargent* (117 N. Y. 329) Judge FINCH, speaking of an agreement of this character, said: " The contract was either a simple agreement for compensation to be enforced against Underwood, or it was an equitable assignment

of a definite share of the proceeds of the claim against Zabriskie. Obviously it is something more than and quite different from a mere agreement for compensation measured by results. That would have given to Fairbanks only a personal claim against Underwood, and scarcely served to induce on his part further services and expenses upon a credit already precarious; and not compensation in general, but a specific share in a specific fund or specific property was the exact and material point of the contract upon which the rights of both parties hinged. * * * There could be no legal assignment of a fund not in existence or proceeds not realized, but equity treats them as if existing or realized, and the contract for their receipt by Fairbanks as an equitable assignment of the stipulated share to him, and, as a consequence, makes him the equitable assignee of so much of the debt or demand as is represented by his share of the proceeds. I think we have never failed to hold this doctrine on a similar state of facts. We discussed the subject somewhat in *Williams* v. *Ingersoll* (89 N. Y. 508), and there said: ' It is a rule in equity that anything which shows an intention to assign on the one side, and from which an assent to receive may be inferred on the other, will operate as an assignment if sustained by a sufficient consideration.' "

In *Holmes* v. *Evans* (129 N. Y. 140) the defendants entered into an agreement with plaintiffs by which they were to undertake the collection of certain claims and were to receive upon settlement or recovery a specified percentage of such recovery or settlement as their compensation. Judge ANDREWS stated the legal effect of the agreement in the following language: " This was not an agreement to pay the plaintiffs out of the fund to be recovered. It was an agreement in effect that they should have a share in the claims, and that when realized, the fund should be divided between the parties in the proportions indicated."

In *Harwood* v. *La Grange* (137 N. Y. 538) an attorney rendered services in an action under an agreement that he should receive his compensation out of the proceeds thereof, and the court said: " That the agreement gave the plaintiff an equitable lien on or ownership as equitable assignee in the proceeds of the action, is not open to doubt."

In each of these cases the facts were vastly weaker than those in the present case. We are, therefore, constrained to hold that the contract operated as an equitable assignment by the Owego Bridge Company to the plaintiff and, by it plaintiff became an equitable assignee of his stipulated share of the last payment. That being so, it must also be held that the defendants Willis N. Conger and Benn Conger incurred a personal liability when they converted it to their own use. In judgment of law the contract between the plaintiff and the bridge company created a trust for the benefit of the plaintiff, his portion of the payment constituting a trust fund set apart for his benefit. If the city of New York still had the money, no one would dispute that the plaintiff could maintain an action to get his share of it. It came into the hands of Willis N. Conger and Benn Conger impressed with the obligations of the trust, and they, without right or authority, with full knowledge of the right that the plaintiff had acquired, took the trust fund with the design of preventing him from obtaining it. The Owego Bridge Company is insolvent. Under these circumstances, it would be strange indeed if these defendants did not incur a personal liability for a breach of the trust. Having willfully and fraudulently violated a duty which equity and good conscience laid upon them, there is no good reason why the plaintiff may not recover of them the damages he has thereby sustained. It follows that the judgment appealed from should be reversed and a judgment entered in favor of the plaintiff and against the defendants Willis N. Conger and Benn Conger for $5,000, with interest thereon from the 27th day of June, 1916, with costs against them in this court and in the court below.

All concurred.

Judgment reversed and judgment directed in favor of the plaintiff and against the defendants Benn Conger and Willis N. Conger for $5,000, with interest thereon from the 27th day of June, 1916, with costs against them in this court and the court below.