MICHAEL KATSORIS, Respondent, v. DURHAM HOUSE, INC., Appellant, et al., Defendants.

Third Department, November 19, 1952.

*James I. Cuff* and *Abraham B. Hertz* for appellant.

*Nicholas Lambadakis* and *Gleason B. Speenburgh* for respondent.

FOSTER, P. J. Appeal from an order of the County Court of Greene County directing a summary judgment in a foreclosure action, and from the judgment entered thereon.

It is alleged that the appellant, Durham House, Inc., executed and delivered on September 5, 1947, its bond and mortgage in the sum of $24,000 to George Pollo. A stockholders' consent is purported to have been executed by Harriet Skleba, George Pollo and Angelo Merlo. It was certified that the outstanding stock of the corporation to vote was fifteen shares, and that each of the individuals who signed the consent to mortgage owned five shares. A resolution of the directors authorized the corporation to borrow from George Pollo or any other person the sum of $24,000, and to execute a bond and mortgage as security for the payment thereof. The president of the corporation, Harriet Skleba, was authorized to execute any papers in connection therewith and to affix the corporate seal thereto. One David T. Rosen apparently was secretary and treasurer at the time but the record does not indicate whether he owned any stock. Whether Pollo was an officer of the corporation at the time does not appear but in any event he was the husband of the president, Harriet Skleba.

Pollo assigned the mortgage to Rosen on August 5, 1948, and the latter reassigned the same to Pollo on September 28, 1948. On the latter date an estoppel certificate was executed by Pollo who styled himself president. On the same date he assigned the mortgage to one Bacolas. The latter reassigned to Pollo on April 18, 1949. On that date Pollo assigned the mortgage to Katsoris, the plaintiff in this action. Another estoppel certificate was executed by Pollo as president. Both estoppel certificates certified that the mortgage was a valid lien on the premises covered to the amount of $21,600, with interest at 4% from the 1st day of September, 1948, and that there were no defenses or offsets to the mortgage or to the bond secured thereby. The mortgage was not recorded until August 19, 1948.

Plaintiff bought the mortgage as a result of negotiations conducted by his attorney Lambadakis. He says in his affidavit that he was not acquainted with Pollo or any of the stockholders of the corporation, and did not meet any of them until litigation arose. The assignment was taken by the plaintiff under rather curious circumstances as indicated by his affidavit and the affidavit of his attorney. Pollo approached the latter and advised him that he wanted to borrow between thirteen and fourteen thousand dollars, for which he would assign the mortgage but would like an option to repurchase it within a period of one year. The sum of $13,100 was paid over for the assignment,

apparently upon the strength of a search made by another attorney for the plaintiff and a letter written by Rosen, who was an attorney as well as a former secretary and treasurer of the corporation. The original mortgage was not delivered because it was said to have been mislaid and so far as the record indicates it has never been found. The mortgage in question was a second mortgage and subsequently plaintiff discovered that payments on the first mortgage of $7,000 were in default to the extent of $3,200, and to cure this default he advanced the latter amount. In his complaint for foreclosure he asked for a judgment of foreclosure and sale for the principal sum of $21,600 with interest, plus the sum of $3,200 advanced on the first mortgage.

Appellant corporation interposed an answer setting forth several defenses to the effect that the purported bond and mortgage were executed without authority of the corporation and without the consent of two thirds of the stockholders; that the purported bond and mortgage were executed without consideration of any kind; and that plaintiff had notice of such defects at the time of the assignment to him. The answer also alleges that Pollo was given the right at any time to obtain a reassignment of the purported mortgage; that such option is still outstanding and hence Pollo should have been made a party to the action.

In support of these defenses there is submitted the affidavit of Pollo who swears that the appellant corporation never received any consideration for the mortgage; that it was not indebted to him either directly or indirectly; that at no time was there a meeting of the board of directors authorizing the execution of the mortgage. He claims that he was personally indebted to Rosen in the sum of $1,800, and the mortgage was arranged so that he could pay Rosen along with other creditors. It is probable that Rosen actually prepared the mortgage but there is no clear cut proof in the record to that effect. The first assignee gave Pollo the sum of $10,800, which was later repaid out of the money received from the plaintiff. Under his agreement with plaintiff he had an option to repurchase the mortgage in question. At the time the original mortgage was executed it was executed in blank and no name was set forth therein as mortgagee. At no time did he tell the other stockholders, officers and directors of the recording of the mortgage or of the various assignments which have been referred to. The affidavit of one Visioni says that he became associated

with the appellant corporation some time in September, 1947, at which time he was elected secretary. In October, 1948, he was elected president. He also claims that the mortgage had no legal inception for the reason that the corporation received no consideration therefor and the instrument was signed without the authority or consent of the board of directors and two thirds of the stockholders. The affidavit of Harriet Skleba, who apparently signed the mortgage as president of the corporation, is to the effect that she was requested to sign the papers but did not read the same, and had no knowledge of what they contained. She states unequivocally that her purported signature on the consent of stockholders dated September 5, 1947, is not genuine and that she did not sign the same. In his affidavit Visioni denies that Pollo was president of the corporation at the times he signed the two certificates of estoppel.

The record as thus outlined does not justify a summary judgment. Some vital factual data are in dispute, and other facts are omitted which should be known before an attempt is made to apply principles of law. The court below relied on documentary proof in holding that no issue of fact was presented. I think this was erroneous for reasons which I shall try to develop.

Generally speaking, a corporate mortgage is not valid unless executed for some consideration flowing to the corporation. If the rule were otherwise, two thirds of the stockholders could in effect give away the corporate real property. If all the stockholders consented of course the situation would be different. Since all the stockholders own the corporate property they could do as they like with it unless there are creditors whose rights have to be considered. Counsel for respondent argues that the appellant corporation is estopped from denying the recital in the mortgage as to consideration. The cases which he cites do not sustain that proposition, or have no application to the facts here.

There are undoubtedly cases where a corporation may lend its credit but there must be some benefit accruing to the corporation unless all the stockholders consent, otherwise the vice of two thirds of the stockholders giving away property of the corporation again appears. In the case before us the proof indicates that the mortgage was executed for the benefit of Pollo alone, or viewed even most favorably to the plaintiff it indicates at least a question of fact. Hence, if only two thirds

of the stockholders executed a consent to mortgage, and if nothing else intervened, the corporation could challenge the validity of the mortgage on the ground that it was executed without consideration.

It may be that all of the stockholders of record did execute the consent, and in that event the corporation would be estopped from raising the issue. The certificate issued by Rosen would indicate that all of the stockholders did sign the consent. But this is confused by the affidavit of Pollo who states that at the time the mortgage was executed Harriet Skleba, Mary Hadjedakis and Rosen were directors of the corporation. It seems unlikely that two of these directors would not be owners of some stock. Although the stock book was produced during the examination before trial of Rosen and Visioni, no specific proof on this point was adduced. In view of this obscurity it seems improper to accept as a fact that all of the stockholders signed the consent. With the stock book in existence proof can easily be adduced as to who were the stockholders of record on the date the consent was signed.

Assuming that the appellant could raise the issue of lack of consideration then the rule comes into play that an assignee of a mortgage takes subject to the equities existing between the original parties, and the defense of want of consideration for the mortgage is available against an assignee, although he is a bona fide purchaser (*Liebowitz* v. *Arrow Roofing Co.*, 259 N. Y. 391). Where an estoppel certificate is given by a mortgagor the foregoing rule must be qualified. Ordinarily an estoppel certificate protects an assignee for value (1 Wiltsie on Mortgage Foreclosure [5th ed.], § 208). But obviously this qualification must be cautiously applied in the case of a corporate mortgage. The assignee must know, at his peril, at least that the person executing the estoppel certificate is one who has real or apparent authority to do so. In the present case both estoppel certificates were signed by Pollo as president of appellant, and it was to him that the mortgage originally ran. This was a rather suspicious circumstance that would seem to have called for some inquiry on the part of the plaintiff. In any event there is a question of fact as to whether Pollo was president of appellant at the time the estoppel certificates were issued, and whether he had any authority to make them.

In addition to all this there is a question presented as to whether plaintiff was actually a bona fide purchaser for value. The loose and casual manner in which the mortgage was pur-

chased by him; the failure to even see the original mortgage or obtain its delivery, and the acceptance of an estoppel certificate without inquiry as to the authority of the mortgagee to execute the same in behalf of the corporation, are facts which taint his claim to being a bona fide purchaser. It is pertinent to point out that he bought a $21,600 mortgage for $13,100. His standing, if his status becomes vital to a decision, should be determined by trial and not by affidavits. Assuming that he is found to be a bona fide purchaser for value and may invoke the doctrine of estoppel, unless it is also shown that the corporation received some benefit, he is protected only to the amount of money he has actually parted with (59 C. J. S., Mortgages, § 369).

The foregoing is sufficient to indicate questions of fact that can only be properly resolved by a trial. The judgment should be reversed, with costs and disbursements in this court to the defendant-appellant and against the plaintiff-respondent.

BREWSTER, BERGAN and COON, JJ., concur; HEFFERNAN, J., taking no part.

Judgment reversed, on the law and facts, with costs and disbursements in this court to the defendant-appellant and against the plaintiff-respondent. [See 281 App. Div. 776.]