### In re PEARL–WICK CORPORATION, Debtor.

### PEARL–WICK CORPORATION, Plaintiff-Appellee,

v.

### JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellee.

### JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant and Interpleading Plaintiff-Appellee,

v.

### SUSWOL HOLDING CORPORATION and Masada Industries, Inc., Interpleaded Defendants-Appellees,

and

Sandra Rand, Carol Sussberg, Careal Realty Co., Inc., Sandra Rand, as Custodian of Stacey Wolfe, Sandra Rand, as Custodian for Even Wolfe, Sherri Wolfe, Lawrence Sussberg, Ronald Sussberg, Milton Sussberg and Gleitsman's Inc., Interpleaded Defendants-Appellants.

### No. 81 Civ. 7017 (RWS).

United States District Court,
S.D. New York.

Feb. 22, 1982.

Angel & Frankel, P.C., New York City, for plaintiff-appellee; Joshua J. Angel, Bruce Frankel, Eric S. Brown, New York City, of counsel.

Shapiro, Shiff, Billy, Rosenberg & Fox, New York City, for interpleaded defendants-appellants; Abraham L. Shapiro, Roy Karlin, New York City, of counsel.

## OPINION

SWEET, District Judge.

Certain preferred shareholders[1] (the "preferred shareholders" or the "interpleaded defendants") of Suswol Holding Corporation ("Suswol") have appealed from an order filed October 30, 1981 by the Honorable Burton R. Lifland and have moved for summary judgment directing John Hancock Mutual Life Insurance Company ("Hancock") to pay over to Suswol the $500,000 proceeds of a life insurance policy. The preferred shareholders seek the proceeds as does the trustee in bankruptcy of the Pearl-Wick Corporation ("Pearl-Wick"), the named beneficiary of the policy. The facts set forth below raise the question whether or not an equitable assignment of the policy was effected. Judge Lifland held that no assignment took place, and his decision is affirmed, 15 B.R. 143 (Bkrtcy.1981), despite seeming equities in favor of the interpleaded defendants.

No issue has been raised with respect to the following facts. In 1964 Hancock issued an insurance policy in the face amount of $500,000 on the life of Darwin R. Sussberg, a director and officer of Pearl-Wick. During 1977, Pearl-Wick was indebted to Bankers Trust Co. ("Bankers") in the approximate amount of $118,000. This debt was secured by an assignment of the policy and, in 1977 was satisfied by at least two cash loans against the policy. In 1977 Suswol held all the outstanding stock of Pearl-Wick and on April 15 of that year a stock purchase agreement ("the agreement") was entered into between Suswol, its shareholders and Masada, pursuant to which Masada acquired from the Suswol stockholders the common stock of Suswol in exchange for cash, notes and certain cumulative preferred stock of Suswol to be issued pursuant to the agreement. The individual parties to this appeal are the interpleaded defendants, those who hold the preferred shares of Suswol issued pursuant to the agreement.

The clause in the agreement which gives rise to the claim of the interpleaded defendants is as follows:

4. *Conduct of Business by Masada.*

"4.1 Masada covenants and agrees that, commencing on the Closing Date, and so long as any of the Preferred Stock or any Contingent Note shall remain outstanding, it will ... (j) Cause Suswol to maintain in force and effect a certain life insurance policy on the life of Sussberg, the proceeds of which upon the death of the insured shall be payable to Suswol in the face amount of $500,000 (Policy No. 8882121 of John Hancock Mutual Life Insurance Company) so long as the entire amount of any premiums due on said policy, are payable out of any dividends, interest or other income generated by such policy. Further, Masada agrees that in the event of the death of the insured at any time during which the Preferred Stock and/or Contingent Notes are outstanding and while Suswol is the beneficiary under such policy, the proceeds of such policy shall be promptly applied by Suswol to redeem and/or pre-pay the Preferred Stock and/or Contingent Notes."

No further formal action was taken pursuant to this clause by Masada, Suswol or Pearl-Wick and none of the parties to the agreement sought to have any formal assignments made or change of beneficiary form executed. On January 23, 1980 Sussberg died. The interpleaded defendants filed a notice of claim with Hancock on May 7, 1980, and on January 7, 1981 initiated an

1. These interpleaded defendants are Sandra Rand, Carol Sussberg, Careal Realty Co., Sandra Rand as Custodian for Stacey Wolfe, Sandra Rand as Custodian for Even Wolfe, Sherri Wolfe, Lawrence Sussberg, Ronald Sussberg, Milton Sussberg and Gleitsman's Inc.

action in the Supreme Court of the State of New York, County of New York. Hancock served a counterclaim, interpleading Pearl-Wick, Suswol and Masada. On February 9, 1981 Pearl-Wick filed a voluntary petition under Chapter 11 and started proceedings to recover the proceeds of the policy. The claims of the Pearl-Wick creditors and the rights of the defendants under the agreement both exceeded the proceeds of the policy.

The interpleaded defendants seek to enforce this agreement maintaining that the intention of the parties to the agreement was clearly expressed and that therefore the agreement served to constitute an equitable assignment of the proceeds of the policy effective in 1977 thereby removing the proceeds from the reach of Pearl-Wick and consequently the trustee in bankruptcy. Pearl-Wick seeks to enforce its rights as the designated beneficiary under the policy.

New York law applies as to the efficacy of the purported transfer. *See generally Strubbe v. Sonnenschein,* 299 F.2d 185 (2d Cir.1962); *G.A. Thompson & Co. v. Wendell J. Miller Mortg. Co.,* 457 F.Supp. 996 (S.D. N.Y.1978); Restatement (Second) of Conflict of Laws § 208 (1971); 97 A.L.R.2d § 1399 (1964).

The first issue is whether, as the interpleaded defendants claim, Masada could exercise dominion over the policy by allegedly changing the beneficiary under the policy and by giving the interpleaded defendants an equitable lien over it. Generally under New York law a corporation's property rights are entirely separate and distinct from those of its shareholders. *Boise Cascade Corp. v. Wheeler,* 419 F.Supp. 98, 101–02 (S.D.N.Y.1976), *aff'd without opinion,* 556 F.2d 554 (2d Cir.1977); *Connecticut General Life Ins. Co. v. Superintendent of Ins.,* 10 N.Y.2d 42, 50, 217 N.Y. S.2d 39, 43–44, 176 N.E.2d 63, 67 (1961); *People v. American Bell Tel. Co.,* 117 N.Y. 241, 251–57, 22 N.E. 1057 (1889). Even complete ownership of all outstanding stock of a corporation is not the equivalent of the ownership of a subsidiary's property or assets. *In re Beck Industries, Inc.,* 479 F.2d 410, 415 (2d Cir.), *cert. denied,* 414 U.S. 858, 94 S.Ct. 163, 38 L.Ed.2d 108 (1973); *Torrey Delivery, Inc. v. Chautauqua Truck Sales & Service, Inc.,* 47 A.D.2d 279, 366 N.Y.S.2d 506, 510 (4th Dep't 1975), *quoting, Brock v. Poor,* 216 N.Y. 387, 401, 111 N.E. 229 (1915).

Citing *Zurlin v. Hotel Levitt, Inc.,* 5 A.D.2d 945, 172 N.Y.S.2d 427 (3d Dep't 1958), the interpleaded defendants contend that Masada in the agreement with these defendants could, without restriction, transfer or assign the policy to Suswol and a collateral security interest to the interpleaded defendants. In *Zurlin* a sister bought out her brother's share in their jointly owned corporation thus becoming the sole shareholder. The purchase was consumated with a corporation bond secured by a properly executed mortgage on the corporation's property. Although the mortgage was given without consideration to the corporation and would thus under normal circumstances be an ultra vires act the court held that the sister could complete such an act and that the corporation could not challenge the transfer.

> While ordinarily such a defense would be available, here the mortgage was consented to and executed by the sole stockholder. No rights of then existing creditors were involved. The sole stockholder was the equitable owner of the corporate property, and, under the undisputed circumstances present here, was free to dispose of or encumber it as she saw fit.

5 A.D.2d at 946, 172 N.Y.S.2d at 429. *See also Field v. Lew,* 184 F.Supp. 23, 27 (E.D. N.Y.1960); *Pine v. Hyed Realty Corp.,* 145 N.Y.S.2d 548, 549 (Sup.Ct.1955), *aff'd,* 1 A.D.2d 952, 151 N.Y.S.2d 610 (1st Dep't 1956). *Katsoris v. Durham House, Inc.,* 280 A.D. 718, 721, 117 N.Y.S.2d 156, 159 (3d Dep't 1953). For such a transfer to be validly ratified, however, the transfer cannot impair the rights of then existing creditors. *Zurlin v. Hotel Levitt, Inc.,* 5 A.D.2d at 946, 172 N.Y.S.2d at 429; *Pine v. Hyed Realty Corp.,* 145 N.Y.S.2d at 549; *cf: Ward v. City Trust Co.,* 192 N.Y. 61, 84 N.E. 585 (1908); *E. Moch Co. v. Security Bank,* 176 A.D. 842, 848–49, 163 N.Y.S. 277, 282

(1st Dep't 1917), *aff'd,* 225 N.Y. 723, 122 N.E. 879 (1919), *Martindale v. DeKay,* 101 Misc. 728, 166 N.Y.S. 405, 407–08 (Sup.Ct.), *aff'd,* 180 A.D. 926, 167 N.Y.S. 1113 (1917), *aff'd,* 224 N.Y. 585, 120 N.E. 869 (1918). Modern New York law limits distributions if the corporation is insolvent or if the distribution would render the corporation insolvent. N.Y.Bus.Corp.Law §§ 510, 203.

■ Financial information on the record for Pearl-Wick is limited to financial statements of Suswol dated June 30, 1976 including separate accounts for Pearl-Wick. The balance sheet figures do not reflect intercompany transfers. Naturally these reports do not reflect the complete financial status of Pearl-Wick on the date of the closing of the agreement. The balance sheet, however, indicates a substantial stockholder equity deficit for Pearl-Wick. Were this the case any transfers by the "sole shareholders" were improper since Pearl-Wick's solvency was doubtful at that time and creditors can effectively challenge the "ratification" of the transfers by Masada. Consequently it appears that the interpleaded defendants' contention that assignments to Suswol and the interpleaded defendants were ratified by the "sole shareholders" of Pearl-Wick has not been proven and appears, at this point, without merit. Contrary to the interpleaded defendants' assertions, Pearl-Wick cannot be deemed to have made a transfer of its property as against its creditors so that summary judgment for the interpleaded defendants was properly denied by Judge Lifland. Since the April 15, 1977 financial data is not on the record, however, a finding of the impairment of creditors rights as asserted by the trustee in bankruptcy cannot unequivocally be made and cannot form a proper basis for summary judgment in favor of Pearl-Wick.

Even if Masada could ratify an assignment of the policy Pearl-Wick argues and Judge Lifland found that the language contained in clause 4.1(j) is not sufficient to effect an assignment in this case. The interpleaded defendants contend that the clause effects an assignment or transfer of the policy from Pearl-Wick to Suswol combined with the assignment of an equitable lien in favor of the preferred shareholders over the policy in question. They first maintain that the references in the clause to Suswol as the beneficiary operate as an assignment of the policy to Suswol or as a redesignation of Suswol as the beneficiary under the policy.

■ As noted by Judge Lifkind an assignment of rights generally requires language manifesting an intention by the owner of the right to make the transfer. *Adams v. Garzillo,* 155 Misc. 358, 359, 279 N.Y.S. 398, 399 (Mun.Ct.1935); 6 N.Y.Jur. Assignments § 28 at 264. There must be sufficient language to establish a completed transfer of title to a present right. *Liberty Wall Paper Co. v. Stener Wall Paper Co.,* 178 N.Y. 219, 221–22, 70 N.E. 501 (1904); *Coastal Commercial Corp. v. Samuel Kosoff & Sons, Inc.,* 10 A.D.2d 372, 376–77, 199 N.Y.S.2d 852, 855–56 (4th Dep't 1960). Although an assignment need not utilize any particular phraseology or form there must be evident words which "show an intention of transferring the chose in action to the assignee, when the assignor is divested of all control and right to [the] cause of action and the assignee is entitled to control it and receive its fruits." *Miller v. Wells Fargo Bank Int'l Corp.,* 540 F.2d 548, 557 (2d Cir. 1976), *quoting, Advance Trading Corp. v. Nydegger & Co.,* 127 N.Y.S.2d 800, 801 (Sup.Ct.1953).[2] The above quoted language in clause 4.1(j) does not evince the intention to make a present transfer to Suswol of the policy nor of a redesignation of Suswol as the beneficiary. Rather it is a covenant by Masada to cause its subsidiary to maintain the policy owned by Pearl-Wick in effect. The clause does not evince "a perfected transaction between the parties intended to vest in the assignee a present right in the things assigned." *Coastal Commercial*

---

**2.** An insurance policy is generally recognized and treated as a chose in action. *Ferro v. Bologna,* 31 N.Y.2d 30, 334 N.Y.S.2d 856, 286 N.E.2d 244 (1972); *Males v. New York Life Ins. Co.,* 48 A.D.2d 50, 367 N.Y.S.2d 575 (3d Dep't 1975).

*Corp. v. Samuel Kosoff & Sons,* 10 A.D.2d at 376, 199 N.Y.S.2d at 855.

The key is that the agreement was not intended to be self sufficient as a transfer to Suswol. It was simply a promise to have a subsidiary maintain a policy in effect and to have the subsidiary apply the proceeds to redeem the stock and notes. Although such a promise or covenant by Masada may have been partially fulfilled by having the policy assigned to Suswol, such a change was not required as such by the agreement and was not brought about. Thus Pearl-Wick remains the beneficiary under the policy.

The interpleaded defendants further contend that the clause operates as an assignment of an equitable security interest in the policy to the defendants. Although a valid assignment generally is precluded by the assignor not transferring his entire interest in the property to the assignee, *Miller v. Wells Fargo Bank Int'l Corp.,* 540 F.2d at 558; *Maloney v. John Hancock Mutual Life Ins. Co.,* 271 F.2d 609, 614 (2d Cir.1959); *Coastal Commercial Corp. v. Samuel Kosoff & Sons,* 10 A.D.2d at 376, 199 N.Y.S.2d at 855, an exception exists which permits the assignor to retain title in the collateral while giving a security interest to the assignee. This exception

> arises in the narrow situation where a "present assignment [is] a transfer[,] by way of security for a loan[,] of claims to become payable in the future, when the transfer is conditioned upon the assignor's default in repayment of the loan." [*Maloney v. John Hancock Mutual Life Ins. Co.,* 271 F.2d at 614.] Thus, the essential feature of a valid "conditional assignment for purposes of security" is that title to the collateral (e.g., an insurance policy) is retained by the assignor subject to his performance of an independent obligation owed to the assignee. The situation thus described is one where the debtor has the alternatives of (1) performing the condition and retaining the collateral or (2) not performing the condition and forfeiting the collateral.

*Miller v. Wells Fargo Bank Int'l Corp.,* 540 F.2d at 559. Thus the issue is whether the language in clause 4.1(j) operates as an assignment of a security interest to the interpleaded defendants thereby constituting an equitable assignment and creating a lien over the property.

■ Again no particular words or phrases are necessary to effect an equitable assignment provided the language exhibits the intention of the owner of the property to transfer the interest as collateral security. *See Fairbanks v. Sargent,* 117 N.Y. 320, 330, 22 N.E. 1039 (1889); *Williams v. Ingersoll,* 89 N.Y. 508, 521 (1882); *In re Bickfords Estate,* 265 A.D. 266, 38 N.Y.S.2d 785, 787 (3d Dep't 1942) (Pledge established by agreement and delivery of instrument); *Considine v. Considine,* 255 A.D. 876, 7 N.Y. S.2d 834, 836 (2d Dep't 1938) (oral assignment accompanied by delivery sufficient); *Lynch v. Conger,* 181 A.D. 221, 168 N.Y.S. 855, 857 (3d Dep't 1917), *aff'd,* 229 N.Y. 543, 129 N.E. 908 (1920); 3 N.Y.Jur.2d Assignments §§ 28, 30; 30 N.Y.Jur.Insurance §§ 885, 890. An assignment of the fund is made when "the debtor would be justified in paying the debt of the assigned part to the person claiming to be the assignee." *Hinkle Iron Co. v. Kohn,* 229 N.Y. 179, 183, 128 N.E. 113 (1920). *See also Miller v. Wells Fargo Int'l Corp.,* 540 F.2d at 559; *Maloney v. John Hancock Mutual Life Ins. Co.,* 271 F.2d at 614.

■ The language of clause 4.1(j) does not evince such an intent to create a collateral security. Technically it is not what has been termed a collateral security since the covenant of Masada to cause Suswol to pay part of the proceeds of the policy to redeem the stock and notes is not dependent on a default by Masada, *see Miller v. Wells Fargo Bank Int'l Corp.,* 540 F.2d 559, but only on the death of Sussberg and the availability of the death benefit while the notes and bonds are outstanding. The policy itself was not assigned as a collateral security since the interpleaded defendants would have had no interest or right by covenant to the cash surrender value of the policy in the event Masada had defaulted on the notes and stock prior to Sussberg's death. It was in substance a redemption agreement; an

obligation to redeem from funds received on Sussberg's death.

Even viewed in that manner the language did not create a collateral security-equitable interest. In *Williams v. Ingersol,* 89 N.Y. 508 (1882), an agreement provided:

That the plaintiffs [attorneys] should be paid for their said services out of any moneys that the said Heath [client] should obtain or become entitled to from any of the matters, suits and proceedings in which they should be engaged.

the agreement further provided that plaintiffs:

should have a lien for all sums that might be owing or due them for their said services, and for the services of each of them and for the services of the attorneys employed by them to the extent of the worth and value thereof upon any sum that might be obtained . . .

In commenting on the first clause the court found it alone insufficient to create an equitable assignment.

Whatever the law may be elsewhere, it must be regarded as settled law of this State that an agreement, either by parol or in writing, to pay a debt out of a designated fund does not give an equitable lien on the fund, or operate as an equitable assignment thereof.

*Id.* at 518. The court, however, then cited the second clause quoted above and found that it was sufficient proof to show the intention to assign or to give a lien on any amount recovered.

This distinction was relied on by the Appellate Division in *Lynch v. Conger,* 181 A.D. 221, 168 N.Y.S. 855 (3d Dep't 1917), aff'd, 229 N.Y. 543, 129 N.E. 908 (1920), where an attorney was to receive $5,000 as payment and that he "should receive out of the funds to be paid by the City of New York in and by the final estimate or final payment, the sum of $5,000." The court interpreting the situation stated:

It is to be observed that the language used in the present case does not show a mere executory agreement to pay a debt out of a designated fund, but a purpose on the one hand to set aside and transfer a fixed portion of a specific fund, in or to come into the hands of a third party and an assent to receive it on the other. It shows an agreement to divide the fund into two parts, one of $5,000, and one of the balance, and the $5,000 portion shall be paid to the plaintiff, not by the contractor, or out of the money to be received by it, but by the city itself.

181 A.D. at 225, 168 N.Y.S. at 857. *See also Fairbanks v. Sargent,* 117 N.Y. at 307–08, 22 N.E. 1039. The language of clause 4.1(j), however, only signifies an agreement to cause Suswol to apply the proceeds of the policy rather than the assignment of a collateral security interest therein.

Indeed in the instant action a separate provision explicitly provided for security for the interpleaded defendants on the preferred stock and the notes. Clause 5 provided as follows:

*Security.* In order to secure payment by Masada of amounts due with respect to the Preferred Stock or the Contingent Notes, if any, and certain other terms and conditions hereof, Masada is simultaneously herewith granting to the sellers a pledge of the capital stock of Suswol being purchased hereby pursuant to the terms of a certain pledge agreement between Suswol and the Sellers dated the date hereof.

The separate pledge agreement was independently executed. This further indicates that if any subsequent assignments or changes in the beneficiary of the insurance policy were to be made as clause 4.1(j) appears to indicate should have been done, then the parties were aware that the agreement was not self-sufficient and that changes should have been made by separate actions of the parties.

Moreover, actions by Pearl-Wick subsequent to the closing of the April 15, 1977 agreement show that Pearl-Wick retained control over the policy and used it for its own benefit. On three separate occasions cash policy loans were consumated for the benefit of Pearl-Wick. Pearl-Wick had not been divested of control and continued to use the policy and its cash surrender value as its own property.

It has been argued that Pearl-Wick, as the wholly owned subsidiary of Suswol, in turn owned by Masada, became bound by the agreement and such may well be the case. All may be liable for breach of the agreement but the issue here presented is whether as against the third parties, Hancock and creditors of Pearl-Wick, the agreement effectively transferred the rights to the policy. Under New York law such an agreement to cause an application of the proceeds does not produce such a result. Consequently, an effective assignment was never made and Judge Lifland's order is affirmed.

Dimly perceived through the formalities of the memoranda submitted by the parties and their counsel are contentions between the Sussberg interests and Kogan, the remaining officer of Pearl-Wick, who asserts that he was unaware of Pearl-Wick's interest in the Hancock policy until after claims had been asserted by the interpleaded defendants. Any hint of impropriety by any of the parties, including allegations of bias on the part of the Bankruptcy Judge have been disregarded.

IT IS SO ORDERED.