allowed him more than a nominal sum for the loss of his earnings (*Ferney* v. *Long Island R. Co.*, 116 N. Y. 377).

The judgment and order appealed from should therefore be affirmed, with costs to the respondent.

LARREMORE, Ch. J., and J. F. DALY, J., concurred.

Judgment and order affirmed, with costs.

---

WILLIAM T. SHACKELFORD, Respondent, *against* ANN ELIZA MITCHILL *et al.*, Executors of Samuel L. Mitchill, Deceased, Appellants.

(Decided June 2d, 1890.)

In 1846, V. assigned a policy of insurance on his life to M., who at the same time agreed that the proceeds, when collected, should be applied to the liquidation of any liabilities of V. to M., any balance remaining to be paid to V.'s legal representatives. In 1851, on a settlement between them, M. abated nearly one half of the amount due him and accepted payment of the remainder and gave V. a discharge in writing "of all demands against him," nothing being said or done in regard to the policy. M. continued to pay the premiums until his death, in 1873, and his executors paid the next premium, after which the premiums were defrayed by the earnings of the policy itself. During this time, nothing was shown to have been done by V. concerning the policy ; and in negotiations between him and M.'s executors in regard to his taking it, nothing was said about it being held as security for premiums. *Held,* that in the absence of any evidence of a change in the original agreement, it must be presumed to have continued, and that, after the death of V., his assignee of the policy was entitled to an accounting with respect to it from M.'s executors.

On such accounting, interest on the payments of premiums should not be computed with annual rests, although such was the usage and course of dealings between the parties until their settlement in 1851 ; there having been no mutual accounts between them after that time, and no accounts of the advances for premiums having been rendered on that basis.

APPEAL from a judgment of this court entered on a trial by the court without a jury.

The facts are stated in the following opinion rendered on the trial at the Special Term.

J. F. DALY, J.—On October 5th, 1846, Adrian H. Van Bokkelen assigned to Samuel L. Mitchill a life policy for $5,000 issued on that day by the Mutual Life Insurance Company of New York on the life of said Van Bokkelen, such assignment being to secure any indebtedness from Van Bokkelen to Mitchill that might arise in the course of dealings between them which began at that time, Van Bokkelen being a shipper of naval stores from Newburn, N. C., and Mitchill being his consignee in New York. Mitchill, by a writing of the same date, agreed with Van Bokkelen as follows : " The proceeds of said policy, when collected, to be applied to the liquidation of any liabilities that may be due from him to me, and any balance remaining after such liabilities are discharged to be paid over to his legal representatives."

The transactions between the parties then commenced continued down to August 1st, 1851, at which date an account was rendered by Mitchill to Van Bokkelen showing a balance due from the latter of $25,342.76. The account was then settled by Mitchill making an abatement of one-half (excepting two sums of $124.50 and $334.60) and accepting, in payment of the balance ($12,909.10) and in full discharge of all demands, acceptances of third parties for the last-mentioned sum, maturing at various times up to twelve months, which were subsequently paid.

This settlement is evidenced by writing ; nothing appears in it, nor in any other paper, concerning the disposition to be made of the policy of insurance which was then held by Mitchill, and which has been kept in force by his payment of the premiums thereon ($124.50 per annum), which premiums were regularly charged in his account with Van Bokkelen.

The $124.50 upon which no abatement was allowed in the final account of August 1st, 1851, was probably the annual premium for 1850 paid in the previous November and charged in the prior account. After the settlement Mitchill kept the

policy alive by regularly paying the annual premiums up to the day of his death, May 11th, 1873, and his executors, the defendants, paid the premiums next falling due in October, 1873. After the latter date the policy became self-supporting, and the premiums were defrayed from the earnings until August 13th, 1888, when Van Bokkelen died, and the amount of the policy, which, together with additions, was $11,000, was paid by the company to Mitchill's executors on December 18th, 1888.

Nothing is shown to have been done by Van Bokkelen concerning the policy up to the death of Mitchill, nearly twenty-one years after the settlement of the accounts between them.

After Mitchill's death, in the year 1877, his executor, Mr. Sturgis, wrote to Van Bokkelen, stating that the estate held a policy in his favor, assigned to Mr. Mitchill; that the original amount was $5,000 and now with accumulations amounts to $10,580; that it has become self-supporting, the yearly dividends not only paying the premiums but in addition leaving something to be added to the policy every year; and under these circumstances it was thought he might desire to purchase the policy from the estate.

No reply having been received, Mr. Sturgis wrote again in 1878, enclosing a copy of the first letter.

In 1883 or 1884 Mr. Van Bokkelen came to the City of New York and saw Mr. Sturgis; the policy, which was kept with the Safe Deposit Company, was shown him, and he was asked to purchase it (according to Mr. Sturgis' testimony) or to pay the premiums or his indebtedness on the policy, and take it and care for it himself (according to the testimony of S. D. C. Van Bokkelen). Van Bokkelen said he would see if he could take the policy up, that he would be very happy to take it up if he could arrange to get the money, and that he was not in a condition then to do anything about it. Nothing was said about its being held as security for premiums.

Van Bokkelen did nothing further until April 25th, 1888,

when he made an assignment to the plaintiff of all his right, title, and interest in the policy. He died less than six months afterwards.

Although there is no written evidence of the agreement upon which Mitchill held this policy after the closing of the transactions to secure which it had been originally given, there is evidence, in the testimony of S. D. C. Van Bokkelen, of an admission or declaration of Mitchill on this subject just prior to the time of the settlement of August, 1851.

This witness was the brother of the insured and was an acceptor of some of the drafts given in settlement, his firm, R. H. Berdell & Co., being acceptors of the others ; he went with his brother to see Mitchill and inform him as to the responsibility of himself and his firm as proposed acceptors, and he swears that Mitchill then said that if his brother died before the drafts matured the proceeds of the policy would be applied towards their payment, and that after those drafts were paid he, Mitchill, would have no other claim against the policy.

The plaintiff, the assignee of Van Bokkelen, now sues for an accounting with respect to the proceeds of the policy and the payment of premiums by the deceased, Samuel L. Mitchill, or the defendants, his executors, claiming that there is due him from defendants the sum of $3,146.71, as follows : Total amount of premiums paid from October, 1851, to October, 1873, inclusive, $2,863.50, interest on each yearly premium of $124.50 from date of payment to December 18th, 1888, $4,889.79, making a total of $7,853.29 to be deducted from the proceeds of the policy $11,000, leaving $3,146.71.

The defendants contend, first, that neither the plaintiff nor his assignor Van Bokkelen had any interest in the policy after the settlement of August, 1851 ; and second, that if they had such interest and the plaintiff is entitled to an accounting, there is nothing coming to him, because, by the usage and course of dealings between his assignor and Mitchill, the account for payment of premiums is to be stated in the manner in which the previous accounts between the parties were

stated, that is to say, with annual rests, adding interest to the principal each year and computing interest on such total as principal. By this method the account would stand as follows: Premiums and interest compounded, $17,239.57, from which the proceeds of the policy, $11,000, are to be deducted, leaving a balance in favor of the defendants of $6,239.57.

There is room for question as to the terms and conditions upon which Samuel L. Mitchill held the policy and paid the premiums after the settlement of 1851. There is force in the defendants' suggestion that the policy may have been part consideration for the abatement of over $12,000 of indebtedness then due him from Van Bokkelen. It does seem, as suggested by defendants' counsel, singular that Mitchell should continue for over twenty years to pay the premiums on the policy, as a mere accommodation to and for the sole benefit of Van Bokkelen; that during that time and for ten years longer, Van Bokkelen should not by word or act indicate that he had any interest whatever in the policy. But in the absence of evidence as to the agreement of the parties in this matter after the closing of the mercantile transactions between them, we must be guided by the presumption of law that the original agreement continued.

By this agreement, made on October 15th, 1846, any balance of the proceeds after the liabilities to Mitchell were satisfied was to be paid over to Van Bokkelen's legal representative.

There was no change in this agreement up to the time of the settlement as testified to by S. D. C. Van Bokkelen, and there is no proof that any change was made afterwards. While it is not in accordance with any known business principles or rules that Mr. Mitchill should carry this policy for so many years apparently for the mere benefit of Van Bokkelen and as a matter of charity, there is no such improbability in it as to overcome the presumption of law to which I have referred, and I feel constrained to hold, therefore, that Van Bokkelen continued to have an interest in the policy

and that his assignor is entitled to an accounting with respect to it.

Upon the accounting I do not doubt that interest should be computed on each payment of premium from the time of payment to the date of collection of the policy, and should not be compounded by allowing annual rests. It is true that, in the mutual accounts of the parties from 1846 to the settlement in 1851, interest was calculated and added in each account to the principal, and that upon the totals and balances interest was again computed; but there is no evidence of an agreement that the usage or course of dealings so established should continue after the settlement of the account and in respect of subsequent advances for the payment of premiums.

No account of such advances was rendered to Van Bokkelen after the settlement. Before that time accounts were sent him semi-annually or annually, but they were discontinued after August, 1851. An agreement to pay compound interest upon subsequent advances for premiums would be implied from the receipt and retention of accounts made out upon that basis, but there were no such accounts. If there were subsequent mutual accounts or dealings between the parties, even if no accounts were rendered, the presumption would be that the prior usage or course of dealings with respect to the computation of interest continued. But there is no presumption in this case, because mutual accounts and dealings had ceased. There was simply an account on one side for premiums paid by Mitchell.

The custom or usage in the prior mutual accounts is not to be presumed to continue in such an account as that. The reason for implying an agreement to pay compound interest in merchants' accounts and mutual dealings is that "an extension of time for payment is implied, and the transaction is fair, as the balance may change, and the benefit of the usage be mutual." (Kelly on Usury, 49, quoted in *Young* v. *Hill*, 67 N. Y. 171).

The reason for the rule does not exist in a case where there are no mutual dealings, as here, where there was merely an

18

advance to pay premiums, and no implied extension for payment, and where the balance could not change nor the benefit of the usage be mutual.

The account for premiums paid was a new account of a different character from the prior dealings between the parties, and there could be no presumption that the usage in the prior accounts was to continue in the subsequent one.

Plaintiff is entitled to judgment, with costs.

From the judgment entered on this decision defendants appealed.

*John E. Parsons,* for appellants.

*Julien T. Davies* and *Edward Lyman Short,* for respondent.

LARREMORE, Ch. J.—The judgment should be affirmed on the opinion of Judge DALY at Equity Term. I recognise, as he did, the force of the suggestion that the retention of the legal title to the life insurance policy may have been part consideration for the abatement of fifty per cent. of the former debt. But there is nothing in the case from which a court could find that it was. There was a settlement between the parties in 1851, in which plaintiff's assignor received " a full discharge of all demands against him to this date." The legal title to the policy still remained with defendants' testator, but, as it seems to me, and as Judge DALY held, such legal title was subject to the provision in the original assignment that " the proceeds of said policy when collected to be applied to the liquidation of any liabilities that may be due from him to me, and any balance remaining after such liabilities are discharged to be paid over to his [Van Bokkelen's] legal representatives."

If all liabilities were settled and discharged in 1851, even though half of the debt was merely forgiven, I cannot see how a court could make a new agreement for the parties, in the absence of any proof of a modification of the original contract between themselves.

Springer *v.* Bien.

I think Judge DALY has correctly held on the subject of interest. The mutual business accounts between the parties were settled and closed in 1851. Therefore, as he has shown by argument and authority, the reason for the rule allowing compound interest ceased to exist.

I am also of opinion that plaintiff was not allowed to trespass upon the fair limits of this controversy as drawn by the pleadings. Plaintiff relies upon the original assignment of 1846, and it was within the scope of his complaint to show that the indebtedness of the parties, then existing, and to accrue from subsequent mutual mercantile transactions, had been liquidated and settled in 1851, so that the clause reserving the policy to the insured and his personal representatives became operative.

BOOKSTAVER, J., concurred.

Judgment affirmed, with costs.