GIBRALTAR REALTY CORPORATION, Respondent, *v.* MOUNT VERNON TRUST COMPANY, Appellant.

**354**

Argued November 23, 1937; decided January 11, 1938.

*William M. Denman* for appellant. The notice received by defendant was not effectual to cause it to recognize plaintiff's claim. (*Field* v. *Mayor,* 6 N. Y. 179; *Wilkins* v. *Batterman,* 4 Barb. 47; *Baldwin's Bank* v. *Smith,* 215 N. Y. 76; *Glennan* v. *Rochester Trust & Safe Deposit Co.,* 209 N. Y. 12; *Crawford* v. *West Side Bank,* 100 N. Y. 50.)

*Jess H. Rosenberg* for respondent. Defendant was guilty of gross negligence as a matter of law in disregarding the assignment after receipt of written notice thereof. (*Field* v. *Mayor,* 6 N. Y. 179; *Wilkins* v. *Batterman,* 4 Barb. 47; *Cosgriff* v. *Hudson City Savings Institution,* 24 Misc. Rep. 4; *Royal Indemnity Co.* v. *International Ry. Co.,* 95 Misc. Rep. 670.) Defendant's status as a bank does not absolve it from the consequences of its gross negligence in disregarding the assignment. (*Allen*

v. *Williamsburgh Sav. Bank,* 69 N. Y. 314; *Kelley* v. *Buffalo Sav. Bank,* 180 N. Y. 171; *Appleby* v. *Erie County Sav. Bank,* 62 N. Y. 12; *Gearns* v. *Bowery Sav. Bank,* 135 N. Y. 557.)

HUBBS, J.   The respondent, an assignee of a deposit in the appellant trust company, sued to recover the amount of the deposit.   The defense interposed is that sufficient notice of the assignment was not received by the bank before a portion of the deposit was withdrawn by the depositor.

In March, 1933, the appellant Mount Vernon Trust Company was closed during the bank holiday.   On March 24, 1933, it was opened on a restricted basis with the privilege of paying out ten per cent of the deposits. On March 25, 1933, Patricia R. Chimanz had on deposit in the bank $1,285.41.   On that date she purchased some real estate from the respondent Gibraltar Realty Corporation for $1,000, paying $128, the ten per cent she was allowed to withdraw from the bank, and assigned to the vendor the balance of the deposit.

On April 4, 1933, about a week after the assignment, respondent wrote to the trust company and stated that the account had been assigned to it.   Nothing was done by the trust company until January 2, 1934, when for the first time, nine months after the notice of assignment, it wrote and acknowledged receipt of the respondent's letter of April 4, 1933, but said that it would not recognize the assignment because " the first charge against this account is the sale of stock under the depositor's agreement " to Mrs. Chimanz.

In the meantime, by the reorganization arrangement, to which Mrs. Chimanz agreed on May 23, 1933, and under which the bank reopened on June 4, 1934, the depositor had become entitled to fifty-five per cent in cash, thirty-three and three-fourths per cent in certificates of beneficial interest, and eleven and one-fourth per cent in capital stock.   That meant $636.28 in cash.   On October

9, 1933, six months after the assignment and notice to the trust company, Mrs. Chimanz signed a subscription for thirty additional shares of stock costing $375, to be deducted from the $636.28 on deposit. That amount has been charged against her account, and it is that charge which the appellant contends comes in ahead of respondent's assignment.

Respondent contends that the bank, after it received the notice, should have held the money for it as assignee. It is true that in some cases a debtor must not pay an assignor when it has notice of an assignment, and some cases have gone so far as to say that the debtor must not pay the assignor when it has knowledge of facts sufficient merely to put it upon inquiry. But there is a recognized difference between banks and ordinary debtors. Ordinarily the relation between a bank and its depositors is that of debtor and creditor. It is bound by an implied contract to repay the deposit on the depositor's demand or order. However, a bank deposit is more than an ordinary debt, and the depositor's relation to the bank is not identical with that of an ordinary creditor. (5 Michie on Banks and Banking, ch. 9.) In *Crawford* v. *West Side Bank* (100 N. Y. 50) it is said that "in disbursing the customer's funds, it can pay them only in the usual course of business, and in conformity to his [the depositor's] directions" (p. 53).

Where a bank dishonors a check of a depositor wrongfully it is liable for damages to the credit of the depositor caused by its wrongful act in refusing to honor the depositor's check. (*Wildenberger* v. *Ridgewood Nat. Bank*, 230 N. Y. 425.) In that case the bank chose to honor the claim of an adverse claimant, and refused to honor checks of the depositor. The court, in holding the bank liable for damages to the credit of the depositor, said: "It dishonored them with full knowledge of the state of the account, setting one risk against another, the risk of adverse claims against the risk of broken

contracts * * *. Defendant made its choice, and must answer for the consequences " (p. 428).

Under such a duty, and in such a dilemma, the bank is entitled to more definite notice than is required of the ordinary assignee. " The substitution of a new creditor is in derogation of the rights of the debtor, and was strictly prohibited by the ancient rules of the common law. It is only by relaxation of those rules, in deference to the convenience of trade, that such assignments have been recognized at all, and now enable a direct suit where the entire claim is assigned to one assignee * * *. The fact, however, of such substitution of a new creditor must, in order to make the debtor liable to the assignee, be brought home to the debtor with much exactness and certainty before he has paid the debt. The rule of notice to him is much more stringent than that which may defeat the title of a purchaser of a chose in action or of real estate. The latter is free to purchase or refuse to purchase as he chooses, and therefore it is his duty, before acting, to trace out any reasonable doubt and inform himself of the true facts as soon as anything arises to put him on inquiry. But the debtor is not so situated. He must pay to his original creditor when the debt is due, unless he can establish affirmatively that someone else has a better right. The notice to him, therefore, must be of so exact and specific a character as to convince him that he is no longer liable to such original creditor, and to place in his hands the means of defense against him, or at least the information necessary to interplead the assignee." (*Skobis* v. *Ferge*, 102 Wis. 122, 130; 2 Williston on Contracts [Rev. ed.], p. 1267.)

By virtue of the implied contract arising from the usage of the banking business a bank is entitled to have some written evidence of an order of a depositor to pay out or transfer his deposit, and is not bound to act on an oral order. (*McEwen* v. *Davis*, 39 Ind. 109; *First Nat. Bank* v. *Stapf*, 165 Ind. 162.) The reason for that is

apparent. In dealing with its numerous depositors, a bank, in paying out its funds on the order of a depositor, must rely upon its knowledge of the signature of its customer in determining whether the document presented in fact bears the signature of its depositor. That usually is the only means it has from which to determine the validity of a check, order or other instrument directing it to pay to a third person, from the balance due from the bank to the maker of the instrument. It is for that reason that a bank requires a depositor to file with it a signature, so that in case of doubt as to the validity of a signature upon an instrument presented for payment, the bank can compare the signature of the depositor on file with it with the signature upon the instrument presented for payment.

" The general custom in banking business is to pay on account of such indebtedness only upon a proper demand therefor by check or its equivalent at the banking house during ordinary banking hours. One who deposits money for his credit in such an account, without any special understanding to the contrary, is presumed to accept the undertaking of the bank to pay according to the general usage in such cases, which is known to all men." (*Koelzer* v. *First Nat. Bank*, 125 Wis. 595, 598; *First Nat. Bank* v. *Stapf, supra.*)

It was doubtless the recognition of these principles that induced the Legislature to adopt section 134, subdivision 5, of the Banking Law (Cons. Laws, ch. 2), which was enacted to protect banks in case of a claim adverse to that of the depositor.

" A bank which receives a general deposit of money becomes the debtor of the depositor and impliedly contracts to honor his checks up to the sum deposited, and it seems beyond doubt that if the bank essays to pass upon the right of an adverse claimant to the fund, and pays over to him any part thereof, it becomes responsible for the amount so paid. A bank cannot, after accepting

a deposit as that of the depositor, deny the title of the depositor. * * * In paying out a deposit to one claiming it adversely to the depositor, however, the bank does so at its peril, and it is liable to the depositor for the amount so-paid if the claim was not a valid one. * * * In England the rule seems to be that a mere notice from a third person that he claims the balance standing to the credit of the customer will not justify the bank in dishonoring a check." (7 Am. Jur., Banks, §§ 413, 414; *Tassell* v.~*Cooper*, 9 C. B. 509; *Jaselli* v. *Riggs Nat. Bank*, 36 App. Cas. [D. C.] 159.)

" The tendency of courts is in favor of enforcing the contract made by the bank with the depositor * * *." (1 Morse on The Law of Banks and Banking, p. 800.)

*Jaselli* v. *Riggs Nat. Bank* (*supra*) holds that where a bank presumes to pass upon the validity of an adverse claim, it must exercise diligence in notifying its customer of its intention to protect itself by withholding enough from the deposit to protect itself against the adverse claimant. There is nothing in that case which enforces a duty on the bank to pass upon the validity of such claim. There is nothing in *Scheffer* v. *Erie County Sav. Bank* (229 N. Y. 50) which calls upon the bank to pay an assignee giving notice by letter. In that case there was sufficient proof of the assignment and the bank resisted payment on the wording of a statute.

Under the peculiar relation existing between a bank and its customers, we think the bank was not called upon to honor the assignment in this case. When the depositor presented her check the bank was in no position to question her title to the funds. That title may be questioned by one holding a better title, but the bank cannot assert that party's right. It was bound to carry out its part of its contract to honor the depositor's checks up to the amount of the deposit, until it had notice sufficient to show that the depositor had put the title to the funds out of her hands. The notice here was

merely a statement by the assignee that it held an assignment of the funds. The bank could not, by reason of such notice, be convinced that it was no longer liable to the original depositor. It could not, by the production of this letter, establish affirmatively that someone else had a better right. There was not placed in its hands the means of defense against the depositor. The case would be different if the assignment itself, bearing the signature of the depositor, had been filed with the bank. Anything less than that is not sufficient notice.

It is urged that appellant, upon receipt of the letter from respondent stating that it had an assignment of the deposit, should have made some effort to ascertain for itself the facts. The answer is clear. That was not its contract with its depositor. It never assumed any such obligation, and if it had assumed it gratuitously it might have made a mistake which would have made it liable for damages. Its obligation, under its contract with the depositor, was to pay, during banking hours, upon presentation of a proper document signed by the depositor. All that respondent had to do was to present the original assignment to the bank so that the bank could ascertain from the original signature that it was that of its depositor. That it failed to do, and because of such failure it should not be permitted to shift its loss onto the bank.

The fact that the bank at the time in question was restricted in its operations by the order of the State Superintendent of Banks did not have the effect of altering the contract between the bank and its depositor. The bank was no more bound by a telephone conversation with or letter from an unknown third party claiming an interest in a deposit, after the order of the Superintendent of Banks became effective, than it was before such order was issued.

The judgment of the Appellate Division and that of the Special Term should be reversed and the complaint dismissed, with costs in all courts.

O'BRIEN, J. (dissenting). From March 24, 1933, to June 5, 1934, defendant trust company was operating on a restricted basis which, under the authority of the Superintendent of Banks, prohibited it from paying out more than ten per cent of its deposits. Patricia R. Chimanz had on deposit with defendant the sum of $1,285.41. She had purchased real estate from plaintiff and, in part payment therefor, she drew her draft for $128, ten per cent of her deposit, and executed a written assignment to plaintiff for the balance. This is the language of that instrument: " For value received, I hereby assign, transfer and set over unto Gibraltar Realty Corporation the balance of $1,285.41 of my account and interest thereon accrued or to accrue thereon deposited in the Special Deposit or Interest Department of the Mount Vernon Trust Company, East Side Branch, East Third Street, at Fulton Avenue, Mt. Vernon, N. Y., represented by Pass Book No. 385, and direct that such sums so assigned be delivered to said Gibraltar Realty Corporation or to its order. I do hereby appoint said Gibraltar Realty Corporation or its attorney irrevocably my attorney with full power to demand, sue for and collect the amount thereof in my name or its name as it may deem proper. Patricia R. Chimanz (L. S.). In Presence of Sol. H. Lewis."

The original document was not filed with defendant nor was a copy served at that time but under date of April 4, 1933, plaintiff's attorney caused the following notice to be delivered to defendant trust company; " Please be informed that the balance of the deposit by Patricia R. Chimanz represented by your Pass Book No. 385 in the Special Deposit or Interest Department Account was assigned by Patricia R. Chimanz to the Gibraltar Realty Corporation to secure the payment of the balance of the purchase price for premises No. 102 North Road, Bronxville Manor, which she was obligated to pay pursuant to her contract of purchase thereof. *Please make a record accordingly and inform me when the*

*balance of this deposit account may be withdrawn.* Copies to Mr. Morgan, Mr. Baker." Defendant ignored this notice for nine months until January 2, 1934, and then refused, in a letter by its attorneys, to recognize the assignment. In the meantime during the process of the reorganization, defendant, then in receipt of the notice of the assignment and without making the slightest inquiry either from the assignor or assignee, accepted from the assignor a depositor's agreement dated May 23, 1933, consenting to the plan of reorganization and a subscription dated October 9, 1933, for thirty shares of stock of defendant payable out of the balance of her deposit. These certificates have been issued to her.

Neither in the record nor in the brief of defendant is the validity of the assignment assailed. It defends on the ground that the assignment was never filed with it and that it never received *due* notice thereof. In defendant's affidavit opposing plaintiff's motion for summary judgment it states its position to be " that the sole controversy in this action is whether or not the stock subscription signed by Patricia R. Chimanz and directing that it be charged against her deposit and thus deducted from the available balance should be recognized, and whether or not the notification of the assignment as made was duly and validly given to the defendant."

The notice of April 4, 1933, is not sufficient to compel defendant, without some inquiry such as would satisfy a prudent business man, to give to plaintiff all the rights of an assignee. The law seems equally clear, however, that without inquiry it was not warranted, in the face of this notice, in continuing to accord to the assignor all the rights of a depositor. On the undisputed facts of this case, defendant as a banking institution, was put on notice to the same extent as any other corporation or individual.

If the validity of the assignment were subject to doubt or even if any one expressed any doubt concerning it, then plaintiff and the assignor might be deemed adverse

claimants and the application of subdivision 5 of section 134 of the Banking Law (Cons. Laws, ch. 2) might require consideration. However, when the depositor, in an instrument which no one attacks, wrote that she did " direct that such sums so assigned be delivered to said Gibraltar Realty Corporation or to its order " she relinquished all claim and ceased to be a claimant. If she ever again became a claimant, she must have done so by invitation of defendant.

Defendant concedes in its brief that in the ordinary situation where a creditor assigns the debt to a third party, any notice of such assignment to the debtor is sufficient and that if the debtor then, disregarding such notice, pays the assignor he is still liable to the assignee. It argues, however, that this rule does not apply to the facts here because the debtor is a bank and it invokes as authority the decisions of this court in *Crawford* v. *West Side Bank* (100 N. Y. 50) and *Glennan* v. *Rochester T. & S. D. Co.* (209 N. Y. 12). These cases do not appear to control. They deal with conditions existing when banks are operating according to full legal capacity and responsible for payment of deposits by check in the usual course of business. In the present situation, defendant was not engaged in the usual course of business but was prohibited from paying out any of the balance then in the assignor's account by check or by any other method. It could accept the assignment and transfer the Chimanz account to the credit of Gibraltar Realty Corporation but could not pay it out. Plaintiff's notice of April 4, 1933, requested: " Please make a record accordingly and inform me when the balance of this deposit account may be withdrawn." Defendant could not, at that time of restricted operation, allow this balance to be withdrawn but it was under a duty, before it continued to recognize and accord to the assignor all the rights of a depositor, to make a record of the transaction and at least inquire from the assignor concerning the facts and to

request the assignee to display to it the assignment. It had no right after such notice to ignore the assignee. There is no case cited which compels courts to sustain a defense of lack of *due* notice when, with the exercise of the slightest degree of ordinary business prudence, defendant could have satisfied itself concerning the validity of this assignment which has never been attacked. In the *Crawford* case, the check, as held by this court, never was a legal obligation enforceable against the drawer by its owner and holder. In the *Glennan* case, the bank, without knowledge of the death of a depositor, paid in the usual course of business a check drawn by him shortly prior to his death. In this court's opinion in the *Glennan* case occurs this statement: " Its [the bank's] contract with the depositor is to pay his *checks* as long as his deposit is sufficient for the purpose, and f.r a failure to pay the *checks* the bank is liable for any injury to the credit of the drawer occasioned thereby " (p. 17). That rule can have no application to the facts in this case. Under the restrictions placed upon this defendant between March, 1933, and June, 1934, it could not have honored any checks which might have been drawn by the assignor. She had checked out her ten per cent before she made the assignment. The exercise of ordinary care and diligence would have satisfied defendant of the validity of this assignment.

Moreover, on defendant's motion, the assignor was brought in as a party defendant and defendant trust company was authorized to serve an amended answer upon her.

CRANE, Ch. J., LEHMAN and LOUGHRAN, JJ., concur with HUBBS, J.; O'BRIEN, J., dissents in opinion, in which FINCH and RIPPEY, JJ., concur.

Judgments reversed, etc.