Hence the ruling above made.

Donald W. MALONEY, as Trustee in Bankruptcy of Eastern Footwear Corporation, Bankrupt, Plaintiff,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.

Civ. No. 5755.

United States District Court
N. D. New York.

July 3, 1958.

Kaye, Scholer, Fierman & Hays, Alexander H. Rockmore, New York City, for plaintiff, Charles H. Cohen, New York City, of counsel.

Lockwood & Vaughan, Utica, N. Y., for defendant, Bert B. Lockwood, Utica, N. Y., George W. Riley, New York City, Thomas H. Smith (of the Boston, Mass. Bar) of counsel.

FOLEY, District Judge.

Both parties move for summary judgment. Each side states and concedes in the briefs there exists no material fact issue which might prevent summary disposition as a matter of law on the papers presented. See Vermont Structural Slate Co. v. Tatko Bros., 2 Cir., 233 F.2d 9. Each agrees substantially on the depositions, exhibits, admissions and writings to be considered although there is some dispute by the plaintiff to the correctness of certain affidavits attached to the motion papers of the defendant and also as to the relevance and materiality of papers on file in this court as to a Chapter XI proceeding involving Eastern Footwear Corporation and its ultimate adjudication as a bankrupt.

The claim does not seem unusual when its demand is merely stated to be one to recover the amount of $42,900.02 on a policy of life insurance, the face amount of the policy being $50,000. However, there is a unique factual situation present which, in my judgment, removes simplicity from the picture and does not allow the ordinary application of simple statutory expression. Aaron Burr expressed ironically his conception that law is whatever is "boldly asserted and plausibly maintained." The vigorous briefing in behalf of the plaintiff with a wealth of New York case law meets the first requisite, but in my judgment there is nothing in the admitted facts to maintain plausibility for the legal construction the plaintiff seeks to draw from such facts.

The question resolves around the issuance of a policy of life insurance No. 4148873 to Eastern Footwear in 1945 as owner-applicant, upon the life of its Vice President and General Manager, James J. Calderazzo. The history of this policy becomes important in 1953. An annual premium in the amount of $1,586 to keep the policy was to be paid November 23, 1953, the last premium payment being made for 1952. Important events occurred in June of 1953. Eastern Footwear was in deep financial trouble and about that time an Unofficial Creditors' Committee was formed at least to guide in some sense the affairs of the harassed company. The depth of the financial difficulty is emphasized for me by the fact that a petition for arrangement was filed in this Court on July 2, 1953 under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. Also in the submitted deposition of D. J. Calderazzo, President of Eastern Footwear, there is support for present or imminent insolvency in June, 1953, by his statement that the operation of Eastern Footwear had shrunk to 1/10 its size (page 17 of his deposition), and Leon I. Radin, the accountant, who has a feature role herein, testified that in June, 1953, the company was insolvent. (Pages 10, 31, 32 of Radin's deposition). In June, 1953, the crucial event happened upon which the plaintiff mainly bases its right to recover. As I read Radin's testimony (pages 4, 7, 8, 29 of his deposition), he and his firm of accountants, Leon I. Radin & Company, were designated by the Unofficial Creditors' Committee in early June, 1953, to make a complete audit of Eastern Footwear's books. Despite this invitation from the Creditors' Committee Radin wanted some security from the debtor corporation, and after his personal urging and request to the attorney, Hays, who apparently was then acting for the Creditors' Committee, and

a discussion with Attorney Levin representing D. J. Calderazzo, the fateful assignment of June 11, 1953 was executed by D. J. Calderazzo as President of Eastern Footwear Corporation. (Pages 4, 5, 7, Radin's deposition.) A copy of the assignment is attached to the "Responses to the Plaintiff's Interrogatories" and its body reads:

"In consideration of accounting services to be rendered, the undersigned hereby assigns to Leon I. Radin & Co., 101 West 31st Street, New York City, all of our right, title and interest in and to the property enumerated on Schedule "A" hereto annexed and James Talcott, Inc. and the insurance companies therein enumerated and are hereby authorized and directed out of the first monies available to pay to said Leon I. Radin & Co. all sums demanded by the said firm upon presentation of bills rendered and approved by the Creditors' Committee, of which Irving Fife is chairman."

Schedule "A" referred to lists merchandise inventory of finished shoes held by James Talcott, Inc. under a warehousing arrangement with Eastern Footwear and then lists twenty-three separate insurance policies totalling a face amount of $585,000, among which is set forth the policy here in question, No. 4148873, issued by the defendant Insurance Company. Copies of the important correspondence between the Radin Company and the defendant Insurance Company in reference to the alleged assignment is attached also to the Responses to the Plaintiff's Interrogatories. Thereafter, in February, 1955, Mr. Radin came before the Referee in Bankruptcy and in a very informal manner was paid the sum of $3,500 from the assets of the debtor corporation still in arrangement for the accounting services he had rendered for the three or four-week period prior to the filing of the petition for arrangement on July 2, 1953. He says he endorsed the check as dictated by the Referee "In full settlement of services rendered to the Creditors' Committee

prior to July 2, 1953, and in full settlement of your assignment of proceeds of all life insurance policies wherein Eastern Footwear Corporation is beneficiary." (pages 17, 18, 21, 22, 33 of Radin's deposition).

On February 14, 1955, Mr. Radin signed a simple, uncomplicated and clear assignment to such effect. This assignment, or reassignment, is attached to the Plaintiff's motion papers. By these efforts, this lawsuit by the trustee of Eastern Footwear was given life in an attempt to resuscitate its collapsed rights.

When the premium was to be paid in November, 1953, the Insurance Company only mailed the notice of the premium to be paid on or before November 23, 1953, to Eastern Footwear. Corporation and James J. Calderazzo, upon whose life the policy was based. Admittedly, no notice of due premium was mailed to Leon I. Radin & Co., the purported assignee. Although Eastern Footwear was under an arrangement proceeding, the premium was not paid by it or Calderazzo or in fact by anyone. At this time, the total amount of loan and interest on this policy was $7,099.98; and in the affidavit of Harold A. Garabedian, attached to the defense motion papers, the policy had a net cash value of two cents, and under certain computation of other credits, the insurance company, considering the policy lapsed as of November 23, 1953, extended its term to May 31, 1954. James J. Calderazzo died September 23, 1954.

Upon these facts the plaintiff claims the proceeds of the policy less the loan amount. The reasoning is that Radin was an assignee who had sent a copy of the assignment to the Insurance Company, and inasmuch as the defendant did not reject the assignment and failed to give notice of premium due to Radin as an assignee, then, by the terms of Section 151 of the New York Insurance Law, McKinney's Consol.Laws, c. 28, the policy did not lapse until one year after the default of payment of the premium due on November 23, 1953. Thus, when the insured died September 23, 1954, the

proceeds of the policy were due and payable to the company. This position taken by the plaintiff is easily stated but difficult to support factually and legally. First, it hinges' upon the premise that the assignment by its wording was a true, valid and absolute assignment. Secondly, it is not supported at all by the surrounding circumstances and facts that the parties to the assignment considered it as such. There are many factors in the record presented on these motions that militate against the ingenious conclusion sought by the plaintiff.

■ A first reading indicates that the instrument had a large string attached to the words "assigns * * * all of our right, title and interest in and to the property", namely, the explicit condition, " * * * and the insurance companies therein enumerated and are hereby authorized and directed out of the first monies available to pay to said Leon I. Radin & Co. all sums demanded by the said firm upon presentation of bills rendered and approved by the Creditors' Committee, of which Irving Fife is chairman." Peculiarly enough, the important end of the string is held by the Creditors' Committee, which the attorneys for the plaintiff argue did not have control of Eastern Footwear affairs at that time. Such rendering and approval of bills necessary to make the assignment in any way effective was not done and could not be done after the petition for an arrangement was filed July 2, 1953. None of the policies were ever delivered to the Radin Company and a resolution of the Directors of the Eastern Footwear Corporation authorizing such company assignment was never produced and probably never existed. More important is the petition filed in this Court July 1, 1953, which lists the cash surrender value of the policies of insurance as a fixed asset of Eastern Footwear, and the detailed schedules filed July 15, 1953 set forth life insurance policies on the life of D. J. Calderazzo and James J. Calderazzo as property of Eastern Footwear at value unknown, without any mention of assignment. It is clear from Radin's deposition that the survey and audit by his firm played a major role in the compilation of the assets and liabilities involved in these papers. Also, highly important is the detailed letter of October 15, 1953, long after the alleged assignment, from the Radin Company to the defendant, John Hancock Mutual Life Insurance Company, asking many details as to certain policies, including this one No. 4148873, characterizing them as "Among the bankrupt's assets". This inquiry was finally answered by a detailed letter from the defendant Company as to the several policies involved and if it did one thing this letter, of course not in statutory form, notified the Radin Company that the premium due on Policy No. 4148873 was paid only to November 23, 1953. It is also evident from Radin's deposition that he never intended to pay any premium and it is inconceivable to me that these persons in intimate contact with the affairs of the debtor corporation would not know of the notices mailed to the company and James J. Calderazzo.

The questionable payment to Radin of $3,500 for service prior to the filing of the petition for arrangement does run counter to at least the spirit of General Order 45 in Bankruptcy and also settled law. Lane v. Haytian Corporation of America, 2 Cir., 117 F.2d 216, at pages 219, 221, certiorari denied 313 U.S. 580, 61 S.Ct. 1101, 85 L.Ed. 1537; In re Ulen, 2 Cir., 130 F.2d 303. However, it evidences again to me that Radin considered the June 11th writing as some sort of pledge, lien or security arrangement devised as a legal gimmick to satisfy his anxiety for payment of services to be rendered without any thought of actual assignment.

■■ Of course, it is true, as the attorneys for the plaintiff point out, that the laws of New York frown upon forfeiture in life insurance situations. But such reasoning is based upon the necessary premise that the assignment was "absolute upon its face". Strauss v. Union Central Life Insurance Company, 170 N.Y. 349, 352, 63 N.E. 347, 348; "valid

upon their (assignments) face". Matter of Holden, 271 N.Y. 212, 218, 2 N.E.2d 631, 633. It is also correct that "a *valid* assignment of a part of an entire debt * * * can be made." Italics mine; Chambers v. Lancaster, 160 N.Y. 342, 343, 348, 54 N.E. 707, 708. In my judgment, the necessary attributes for good assignment were clearly lacking, and a good example of how it should have been done if they wanted real assignment is the simple reassignment form back from Radin Company to Eastern Footwear Corporation. It takes much legal sharpshooting to keep this situation within the sights of the New York Statute and settled case law, and it is impossible for me to reach the conclusion sought by the plaintiff Trustee that would allow the bonanza of the proceeds of this policy after the Eastern Footwear Corporation, a debtor in arrangement, and under the supervision of the Bankruptcy Court, deliberately failed to pay the premium after notice was received of its due date.

The attorneys for the plaintiff would want one only to read the alleged assignment writing and give little regard to the surrounding circumstances. But the law of New York is against such approach. Empire Properties Corporation v. Manufacturers Trust Co., 288 N.Y. 242, 248, 43 N.E.2d 25, 28: " * * *. The meaning of a writing may be distorted where undue force is given to single words or phrases. We read the writing as a whole. We seek to give to each clause the intended purpose in the promotion of the primary and dominant purpose of the contract." Then, in Matter of Mencher, 276 App.Div. 556, 565, 96 N.Y.S.2d 13, 21: "The practical construction which the parties themselves place upon a contract is a most significant factor in connection with its judicial interpretation." See, also, Gillet v. Bank of America, 160 N.Y. 549, 555, 55 N.E. 292.

It is my conclusion that the writing of June 11, 1953, was not a valid, absolute assignment, but contained a condition precedent never performed and later impossible of performance. The denial of

validity in the defendant's answer is a good one and the Third affirmative defense must be sustained. The motion made by plaintiff for summary judgment is denied. The motion for summary judgment made by the defendant is granted. Judgment shall enter in favor of the defendant that the plaintiff is not entitled to recover, and the complaint is dismissed as a matter of law. See Matteson v. United States, 2 Cir., 240 F. 2d 517.

It is so ordered.