Donald W. **MALONEY** as Trustee in Bankruptcy of Eastern Footwear Corporation, Plaintiff-Appellant,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellee.

No. 301, Docket 25333.

United States Court of Appeals Second Circuit.

Argued May 13, 1959.

Decided Oct. 23, 1959.

612

Charles H. Cohen, New York City (Kaye, Scholer, Fierman & Hays, and Alexander H. Rockmore, New York City on the brief), for plaintiff-appellant.

George W. Riley, New York City (Merritt E. Vaughan, Utica, N. Y., on the brief), for defendant-appellee.

Before SWAN, HINCKS and MOORE, Circuit Judges.

HINCKS, Circuit Judge.

The trustee in bankruptcy of Eastern Footwear Corporation brought this action to recover upon an insurance policy issued to Eastern, prior to its bankruptcy, upon the life of one of its officers, James J. Calderazzo. The undisputed facts present this single issue, viz., whether the defendant insurance company, by failure to comply with the notice provisions of § 151 of the New York Insurance Law with respect to premiums due and defaulted in November of 1953, prevented the policy from lapsing during the year following the default, the insured having died within that period. This question is best answered after a brief account of the relevant circumstances leading up to this litigation.

In June of 1953 Eastern was in serious financial difficulties causing some of its creditors to form an unofficial creditors' committee to assist the corporation with its faltering affairs. This committee immediately designated a firm of accountants, Leon I. Radin & Company (which we shall hereinafter refer to as an individual, "Radin"), to make a complete audit of Eastern's books. Radin was aware of the fact that Eastern was in a none too firm financial condition and in an effort to secure payments for his future services he insisted upon and received a document which purportedly assigned to him Eastern's interests in certain merchandise and twenty-three insurance policies. These policies, one of which is the subject of this action, had a face amount of $585,000, although their net cash value was practically zero because of extensive loans thereon.

The crucial terms of the so-called "assignment," signed by the president of Eastern on June 11, 1953, are:

"* * * The undersigned hereby assigns to Leon I. Radin & Co., * * * all our right, title and interest in and to the property enumerated on Schedule 'A' * * * and the insurance companies therein enumerated and [sic] are hereby authorized and directed out of the first monies available to pay to said Leon I. Radin & Co. all sums demanded by said firm upon presentation of bills rendered and approved by the Creditors Committee, of which Irving Fife is chairman."

A copy of this instrument was sent to the defendant which acknowledged receipt of the assignment referring to it as such and requested its certification and a copy of minutes of the directors' meeting authorizing the assignment. Radin furnished the defendant with a certification but the directors' minutes were never supplied by Radin or by the plaintiff at trial. The defendant mailed notices of the November 1953 premiums to both Eastern and the insured but failed to mail any notice to Radin, and neither

he nor anyone else ever paid any further premiums.

Several weeks subsequent to the execution of the instrument involved herein Eastern filed a petition for arrangement under Chapter XI of the Bankruptcy Act, and in February, 1955, by authority of the referee in bankruptcy, Radin was paid $3,500 from the assets of Eastern for the services he had rendered for the few weeks prior to the arrangement petition. According to Radin's testimony this payment was conditioned on the reassignment to Eastern of all of his rights in the policy.

The court below, as reported in 164 F.Supp. 93, 96, granted summary judgment for the defendant, reasoning that the instrument, in the light of the circumstances surrounding its execution, was not a valid absolute assignment but only a "legal gimmick to satisfy * * * payment of services." Consequently, it concluded that the notice provisions of § 151 New York Insurance Law were inapplicable to Radin and that the defendant's failure to notify him did not prevent a lapse of the policy upon the premium default. For the reasons hereinafter stated this judgment must be reversed.

■■ The New York courts have on numerous occasions interpreted the provision of the New York Insurance Law before us, and it is to the spirit and temper of such decisions, rather than the conflicting claims of unjust enrichment made by both parties in the instant case, that we must primarily look for proper guidance. These decisions make several things amply clear. The burden was upon the defendant to show full compliance with the notice provisions of § 151. Salzman v. Prudential Ins. Co. of America, 296 N.Y. 273, 72 N.E.2d 891, 9 A.L.R. 2d 1432; Imbrey v. Prudential Ins. Co. of America, 286 N.Y. 434, 36 N.E.2d 651. Moreover, the provisions of § 151[1] relating to premium notices to assignees are intended to protect assignees who take their assignments as security for debts as well as absolute assignees. Strauss v. Union Cent. Life Ins. Co., 170 N.Y. 349, 63 N.E. 347. Consequently, insurance companies are under no duty to determine whether an assignment is absolute or conditional, Strauss v. Union Cent. Life Ins. Co., 33 Misc. 333, 67 N.Y. S. 509, affirmed, supra;[2] notice must be given to holders of either type of assignment. With such principles for our guide we think that the defendant, in or-

1. Section 151.
  "1. No life insurance policy or noncancellable disability insurance contract hereafter delivered or issued for delivery in this state shall terminate or lapse by reason of default in payment of any premium, installment, or interest on any policy loan in less than one year after such default, unless a written or printed notice as provided in subsection two, shall have been duly addressed and mailed at least fifteen and not more than forty-five days prior to the day when such premium, installment or interest becomes due but if such contract is supplemental to a contract of life insurance a separate notice shall not be required.
  "2. The notice required by subsection one shall
  "(a) be duly addressed and mailed to the person whose life or health is insured, or in case any other person shall have been designated to receive such notices and written notice of such designation and the name and address of such

person have been given to the insurer, then to that person, and, in the case of an assignment of such policy, to the assignee, if written notice of the assignment and of the name and address of the assignee has been given to the insurer, and in any case such notice shall be addressed to the last known post-office address of such person;"

2. At the time of the Strauss decision the statute required that notice be sent "to the person whose life is insured, *or the* assignee of the policy, if notice of the assignment has been given to the corporation." Subsequently the statute was amended to change *or* to *and*. Since the amendment included no other relevant provisions, it may fairly be inferred that the legislature adopted the rule of the Strauss decision whereby, to avoid a year's postponement of a lapse, a premium notice under § 151 must be given to those taking conditional assignments for security only, as well as those taking absolutely.

der to cause a lapse in the policy prior to a year after premium default, was under a duty to give statutory notice to Radin, an assignee of whom it had notice, unless such assignment was, for some reason, invalid.

It is true that the New York courts have often stated that an effective assignment necessitates such a present transfer of title or dominion that the debtor can safely pay the fund to the assignee notwithstanding any protests or orders to the contrary by the assignor. Spencer v. Standard Chemicals & Metals Corporation, 237 N.Y. 479, 143 N.E. 651; East Side Packing Co. v. Fahy Market, 2 Cir., 24 F.2d 644. But we fail to see how this principle assists the defendant. Eastern by words of present agreement and present transfer assigned all of its "right, title and interest" in the policy. Cf. Donovan v. Middlebrook, 95 App. Div. 365, 88 N.Y.S. 607. It is true that the sum of money which Radin might ultimately realize under the assignment was not fixed by the instrument. But this incident is not decisive. In re New York, N. H. & H. R. Co., D.C.Conn., 25 F.Supp. 874; Malone v. Bolstein, D.C. N.D.N.Y., 151 F.Supp. 544. Neither is the fact that the assignee's right to the proceeds was conditioned upon approval by the creditors' committee of his bills. Mere power in the assignor to control the amount of eventual payment under a transfer does not necessarily prevent an effective assignment. Fairbanks v. Sargent, 104 N.Y. 108, 9 N.E. 870, 6 L.R.A. 475; 117 N.Y. 320, 22 N.E. 1039. Here we need not go so far. For it is clear that a certificate by the creditors' committee, a party independent in interest and not controlled by the assignor, would have enabled the debtor to pay the fund to the assignee with safety to itself, notwithstanding the protests of Eastern, the assignor, who gave up all of its rights and interests. Cf. Hitchings v. Central Electrical Supply Co., 182 App. Div. 28, 169 N.Y.S. 611.

In any event numerous decisions of this circuit recognize the validity of conditional assignments under New York law. Such opinions recognize as an effective present assignment, a transfer by way of security for a loan of claims to become payable in the future, when the transfer is conditioned upon the assignor's default in repayment of the loan, In re New York, N. H. & H. R. Co., supra, Corbin on Contracts, §§ 875, 876, Restatement of Contracts, § 150; or even upon his default in performance of an independent contract, Malone v. Bolstein, supra, In re McCrory Stores Corporation, 2 Cir., 73 F.2d 270. See also, In re Allied Products Co., 6 Cir., 134 F. 2d 725. This case clearly falls within the rule of these cases. The parties to the transfer in this case plainly intended to make a present transfer of all Eastern's interest in the policy subject to a double condition, viz., (1) that Eastern should make default of payment for Radin's services and (2) that the bill therefor should be approved by the creditors' committee.

The insurer-defendant contends that in no event did Eastern agree to give up dominion over the surrender value and loan value rights. But we find no evidence to support this contention. In any event, nothing in the instrument appears to betoken a retention of dominion and the natural import of its terms are to the contrary. Normally an assignment of life insurance as collateral security would vest these rights in the assignee, at least on the occurrence of the condition. Conlew, Inc. v. Kaufmann, 269 N. Y. 481, 199 N.E. 767; Senese v. Senese, Sup., 121 N.Y.S.2d 498; Greenberg v. Equitable Life Assurance Society, D.C. D.Minn., 167 F.Supp. 112. Our conclusion seems consonant with Radin's testimony that he never intended to pay the premiums but planned, if necessary, to surrender the policies and realize upon their surrender value. The insurer's argument that this instrument was merely a pledge with the legal title remaining in Eastern not only distorts the plain language of the instrument but ignores those New York decisions which hold that less artful language is sufficient to pass legal title when life insurance is

purportedly assigned as collateral security. Palmer v. Mutual Life Ins. Co. of New York, 38 Misc. 318, 77 N.Y.S. 869; Shackelford v. Mitchell, 16 Daly 268, 10 N.Y.S. 122.

The circumstances surrounding the drafting of the instrument and the practical construction placed upon it by the parties reinforces our conclusion that an assignment as collateral security was intended and executed. The only testimony as to the intent of the parties is that of the assignee who said that he intended, in view of Eastern's financial difficulties, to take an assignment for security purposes, and that of Eastern's president who said he was entirely willing to make the assignment because the equities in the policies had been reduced to a nominal figure. The fact that Eastern subsequently listed the cash surrender value of the policies as a fixed asset in its petition for arrangement without mentioning the assignment could not restrict rights taken by the assignee nor could it in any way relieve the defendant of its obligation to pay over to an assignee under a valid assignment of which it had notice. Greenberg v. Equitable Life Assurance Society, supra. It is true that Radin, as Eastern's auditor, several months subsequent to notifying the defendant of his assignment, questioned the defendant as to the status of the policy in question (together with others), stating it to be "among the bankrupt's assets, as indicated by its books." But nothing in this inquiry was inconsistent with Radin's prior notice of claim to a valid conditional assignment. For aught that appears, it was merely an effort to learn whether Eastern had an equity in the assigned policies over and above Radin's claim which was secured by the assignment.

It is true that the defendant's answer to a letter from Radin showed that the premium was paid only to November 1953. But this letter fell short of compliance with the statutory requirements.[3] Flint v. Provident Life & Trust Co. of Philadelphia, 215 N.Y. 254, 109 N.E. 248; McDonald v. Aetna Life Ins. Co., 182 App.Div. 482, 169 N.Y.S. 762. Similarly, of little assistance to the defendant is the fact that the assignee might have been aware of the statutory notice received by the assignor, for it is clear that the notice must at least be "duly addressed and mailed" to the assignee at his last post-office address in the state. Phelan v. Northwestern Mut. Life Ins. Co., 113 N.Y. 147, 20 N.E. 827; Imbrey v. Prudential Ins. Co. of America, supra; Goeller v. Equitable Life Assur. Soc. of United States, 251 App.Div. 371, 296 N.Y.S. 854.

We fail to find any substance whatever in the defendant's somewhat querulous contention that the instrument by its ambiguous terms served to "impale the insurance company on the horns of a dilemma." The defendant company itself permitted assignments of the policy without requiring its prior approval or specifying any particular form. Moreover, the defendant after notification of the assignment in no way asserted that it was ineffective to transfer Eastern's interests in the policy; it merely requested a copy of the directors' minutes authorizing the assignment. Especially since it had already received a copy of a certificate by Eastern's president that the assignment had been executed by authority of Eastern's di-

---

3. Section 151, paragraph 2(c), provides: "2. The notice required by subsection one shall

\*     \*     \*     \*     \*

"(c) state the amount of such premium, installment, or interest, the date when due, the place where it shall be paid, the person to whom it is payable; and shall also state that unless such premium, installment, or interest, shall be paid to the insurer, or to the duly appointed agent or person authorized by it to collect the same, on or before the date when due or within the specified grace period thereafter, the policy and all payments thereon will become forfeited and void except as to the right to a cash surrender value or a paid up policy or extended insurance, if any, as provided in this chapter."

rectors, the defendant could not unilaterally condition the effectiveness of the assignment on receipt of a copy of the minutes of the directors' meeting. Moreover, the notarial certificate was *prima facie* evidence that the assignment had been duly executed. Cf. New York Civil Practice Act, §§ 384, 386; Hedger v. Reynolds, 2 Cir., 216 F.2d 202; Breuchaud v. Bank of New York & Trust Co., 157 Misc. 375, 283 N.Y.S. 812. Certainly the defendant had received a notice adequate to put it on inquiry as to the existence and extent of the assignment claimed. Continental Purchasing Co. v. Van Raalte Co., 251 App.Div. 151, 295 N.Y.S. 867. Even though the policy contained a "non-responsibility clause," McGlynn v. Curry, 82 App.Div. 431, 81 N.Y.S. 855, the defendant would have subjected itself to double liability if it had wrongfully paid to Eastern after receipt of the acknowledged assignment. Greenberg v. Equitable Life Assurance Society, supra. Cf. Gibraltar Realty Corporation v. Mount Vernon Trust Co., 276 N.Y. 353, 12 N.E.2d 438, 115 A.L.R. 322. We think a notice adequate thus to subject the defendant to the hazard of double liability was ample to subject it to the peril of noncompliance with § 151. And we cannot understand how the defendant can seriously claim that ambiguity in the instrument subjected it to hardship. If ambiguity there was (which we fail to perceive), it was a simple task for it to send a § 151 notice to Radin even though it should subsequently develop that the notice had been unnecessary. Surely that horn of the dilemma, which could have been avoided at the cost of a postage stamp, was scarcely lethal.

It is true that our decision herein will bring an unexpected windfall to the trustee in bankruptcy of the assignor who, with notice, defaulted in premium payments. Moreover, we are not unmindful of the fact that the New York courts have held that § 151 must be reasonably interpreted so as not to operate in an unduly harsh manner upon insurance companies. McDougall v. Providence Sav. Life Assur. Soc., 135 N.Y. 551, 32 N.E. 251. Cf. Strauss v. Union Cent. Life Ins. Co., supra. But since we hold that Radin took a valid assignment, of which the defendant had been notified, it follows as a matter of law that the absence of the statutory premium notice to the assignee caused a year's postponement in the lapse of the policy, notwithstanding the fact that the original assignor in this particular case, through its creditors in bankruptcy, will benefit. A contrary holding, as a general rule of law, would allow just those types of windfalls to insurance companies which § 151 was intended to prevent.

In accord with the views expressed above we reverse the judgment below and remand with a direction that summary judgment be entered for the plaintiff with interest and costs.