In the Matter of the Accounting of WILLIAM L. SCHRAUTH, as Trustee under the Will of LAURA W. PRESTON, Deceased, Respondent. NANETTE PRESTON et al., Respondents; THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

Second Department, May 19, 1969.

*Marshall F. Denenholz* (*Valentine A. Meehan* of counsel), for appellant.

*William L. Schrauth,* respondent in person.

*Barkho & Phair* (*James S. Phair* of counsel), for Nanette Preston and others, respondents.

MARTUSCELLO, J.   The question presented is whether the Surrogate was correct in concluding that a certain life insurance

policy issued by the appellant, The Equitable Life Assurance Society of the United States (hereinafter referred to as " Equitable "), was in full force and effect at the time of the insured's death.

The facts are not in dispute. In May, 1961, Equitable issued the policy in question, in the amount of $20,000, on the life of Bruce Wilcox Preston (hereinafter referred to as the " insured "). The insured's estate was designated as the beneficiary. The insured and the petitioner Schrauth were coexecutors and cotrustees under the will of the testatrix Laura Wilcox Preston. By means of unauthorized indorsements of Schrauth's name on bank withdrawal slips, the insured misappropriated to his own use estate funds amounting to some $16,000. Apparently to secure reimbursement to the estate for his defalcations, the insured assigned the insurance policy to himself and Schrauth, as executors and trustees. On July 26, 1961, the policy and a written assignment thereof, duly executed by the insured, were forwarded to Equitable by mail, accompanied by a check drawn by the insured in the amount of the second quarterly premium, which was due August 16, 1961. In a letter dated August 9, 1961 accompanying the return of the policy, Equitable acknowledged receipt of the assignment and stated that " the effect of the assignment * * * is to vest title in and to the policy in said assignees as executors and trustees under said Will and in the absence of any adverse claim, the death claim proceeds will be payable to William L. Schrauth and Bruce Wilcox Preston as executors and trustees under the Last Will and Testament of Laura Wilcox Preston, deceased." Since that time Schrauth has retained physical possession of the policy.

In the meantime, on or about June 8, 1961, the insured applied to Equitable for additional insurance. During the course of Equitable's investigation of that application it was discovered for the first time that the insured had made material misrepresentations with respect to his health in the original application for the policy. Because of this, Equitable elected to decline the application for additional insurance and to rescind the policy. On or about August 18, 1961, Equitable personally served the insured with a formal notice of rescission, which also contained an offer by Equitable to refund to the insured the amount of premiums already paid, plus interest; however, Equitable never notified the coassignee Schrauth of the unilateral rescission. According to Schrauth, he wrote Equitable on or about December 1, 1961, to inquire as to whether the

third quarterly premium, which was due November 16, 1961, had been paid. Schrauth did not receive a reply to this letter. On or about December 28, 1961, the insured appeared at Equitable's home office. He executed a release and Equitable gave him its check, representing a refund of the premiums paid, plus interest. Equitable requested the insured to return the policy, but he stated that it had been lost or stolen and executed an affidavit to that effect. In fact, as above stated, the policy was in the possession of coassignee Schrauth. On or about December 23, 1966, Schrauth wrote Equitable, advising that the insured had died on or about December 16, 1966 and requesting a claim form for payment of the proceeds of the policy.

All the parties concede that Equitable's unilateral rescission was ineffective as against Schrauth (presumably because Schrauth was not given notice thereof) and that the insured's subsequent surrender was ineffective since the insured was a stranger to the ownership of the policy after the assignment. Equitable, however, seeks to avoid liability on the theory that the policy lapsed for nonpayment of premiums. Schrauth and the respondent legatees under the will take the position, as did the learned Surrogate, that, since Equitable's ineffective attempt to effectuate a unilateral rescission and a surrender thereafter was the factor which induced the termination in premium payments, Equitable cannot avoid liability on that theory. We disagree.

It is clear that had there been no attempt at rescission and surrender, the policy would have lapsed, by its own terms, for nonpayment of the quarterly premium due November 16, 1961. The obligation of an insurer to pay the proceeds of a life policy upon the occurrence of the insured's death is conditioned upon timely payment of premiums (*Klein* v. *Insurance Co.*, 104 U. S. 88, 91). However, section 151 (subds. 1, 2, par. [a]) of the Insurance Law casts a duty upon the insurer to give advance notice that a premium is to become due, both to the party whose life is insured and to any assignee of the policy where, as in the case at bar, the insurer has been given written notice of assignment. Admittedly, Equitable did not comply with the notice requirements of section 151; but the consequence of this omission was not to dissolve forever the duty to pay premiums. Subdivision 1 of this section makes it clear that the only consequence of noncompliance with its notice requirements is that any lapse of policy for nonpayment of premiums is postponed for a period of one year after premium payment default (see *Maloney* v. *John Hancock Mut. Life Ins. Co.*, 271 F. 2d 609;

*Kaplan* v. *Equitable Life Assur. Soc. of U. S.,* 177 Misc. 792, 795–796; *Brown* v. *Travelers Ins. Co.,* 159 Misc. 694, affd. N. Y. L. J., May 2, 1936, p. 2249, col. 7 [App. Term, 1st Dept.]). It thus appears that, but for the abortive attempt at rescission and surrender, the policy would have lapsed for nonpayment of premiums on November 16, 1962, more than four years prior to the death of the insured.

In the absence of wrongdoing by an insurer, a life insurance policy issued by it may lapse for nonpayment of premiums, notwithstanding a prior invalid attempt by the insurer to effectuate a surrender thereof; and an abortive attempt at surrender does not, standing alone, constitute such wrongdoing (*Ruckenstein* v. *Metropolitan Life Ins. Co.,* 263 N. Y. 204). *Whitehead* v. *New York Life Ins. Co.* (102 N. Y. 143) is not to the contrary. In *Whitehead* the insured, who was not the owner of the policies, surrendered them to the insurer in consideration of sums paid to him upon each such surrender. This was done without the knowledge or consent of the owners of the policies. One of the policies lapsed for nonpayment of premiums prior to the surrender. The other two, which were owned by the insured's children, were in full force and effect at that time. The children were unaware of the existence of the policies and of their ownership rights until after their father's death. Upon learning the facts, the children demanded the proceeds. The insurer sought to avoid liability on the theory that all of the policies had lapsed for nonpayment of premiums. The court held that there could be no recovery on the policy which had lapsed prior to its surrender, but that the insurer could not resist liability on the other two since it was its wrongful conduct of taking those policies and cancelling them, without notice to the owners, which succeeded in preventing payment of premiums thereafter. The court reasoned that had the insurer notified the owners of the insured's wrongful surrender, one of two things would certainly have occurred: Either the owners would have consented to the surrender or they would have kept the policies in force by themselves paying the premiums as they became due.

The case at bar presents an entirely different situation. Schrauth was not prejudiced by Equitable's failure to notify him of the unilateral rescission and subsequent surrender. But for this very omission, the rescission would have been effective. Moreover, even if Schrauth had been notified of the surrender, he could not have kept the policy in force by himself

paying the premiums. Having rescinded the policy, Equitable would have refused a tender of premiums. Additionally, Schrauth, an attorney, was not ignorant of his ownership rights. It was he who had brought about the assignment of the policy in the first instance; and he retained physical possession of the policy itself. He took a policy with no surrender value whatsoever as security for a $16,000 debt from the defaulting trustee who had created the debt. Yet, other than forwarding the second premium and inquiring as to whether the third had been paid, he " sat back " (to use his own words) and thereby permitted the time for payment of quarterly premiums to run through one, two and, ultimately, five years without making further inquiry concerning the status of the policy.

*Stilwell* v. *Mutual Life Ins. Co.* (72 N. Y. 385) is not to the contrary. While the court therein held that the irrevocable beneficiary was entitled to a restoration of the policy because the insured lacked power to effectuate a surrender thereof without the beneficiary's consent, the court went on to say that in an action upon the policy the insurer " can interpose any defense which could have been interposed in an action upon the original policy if it had not been surrendered " (p. 393). *Dulberg* v. *Equitable Life Assur. Soc. of U. S.* (277 N. Y. 17) is also distinguishable. The lapse of the policy in that case was brought about by the insurer's wrongful refusal of a tender of the premium due. Finally, *Grauer* v. *Equitable Life Assur. Soc. of U. S.* (167 Misc. 30) involved a different factual situation and presented equities that are not present in the case at bar.

Accordingly, the decree under review should be reversed insofar as appealed from, on the law and the facts, without costs, and the proceeding remanded to the Surrogate's Court for entry of a decree adjudging that the appellant is not liable upon the policy in question.

CHRIST, Acting P. J., BRENNAN, RABIN and HOPKINS, JJ., concur.

Decree reversed insofar as appealed from, on the law and the facts, without costs, and proceeding remanded to the Surrogate's Court for entry of a decree in accordance with the opinion rendered herewith.